2010 UT 59

Lonnie ESKELSON, on behalf of Jacob ESKELSON, a minor, and Lavon Eskelson, Plaintiffs and Appellants,

v.

DAVIS HOSPITAL AND MEDICAL CENTER and Jonathan Apfelbaum, Defendants and Appellees.

No. 20080484.

Supreme Court of Utah.

Oct. 15, 2010.

Dennis A. Gladwell, Lorraine P. Brown, Ogden, for plaintiffs.

Robert G. Wright, Zachary E. Peterson, Cortney Kochevar, Salt Lake City, for defendants.

### AMENDED OPINION *

On Petition for Rehearing

PARRISH, Justice:

### INTRODUCTION

¶ 1 Lonnie Eskelson sued Dr. Jonathan Apfelbaum on behalf of his four-year-old son Jacob, alleging that Dr. Apfelbaum perforated Jacob's eardrum during an attempt to extract a bead lodged in Jacob's ear. Mr. Eskelson appeals the district court's decision excluding his expert testimony and granting summary judgment in favor of Dr. Apfelbaum.

### BACKGROUND

¶ 2 On May 24, 2004, Jacob Eskelson stuck a bead in his ear. His mother, Lavon Eskelson, first took Jacob to Wee Care Pediatrics, where a nurse practitioner attempted to remove the bead with a saline flush and soft curette. When this failed, Mrs. Eskelson took Jacob to the emergency room at Davis Hospital and Medical Center where Dr.

* Substantive changes are contained in ¶ 15 and a grammatical error has been corrected in footnote

2.

Apfelbaum unsuccessfully attempted to remove the bead with bayonet forceps and then with a soft curette. Because Jacob was becoming agitated during the procedures, Dr. Apfelbaum requested that Mrs. Eskelson restrain him. Mrs. Eskelson testified in her deposition that Jacob suffered intense pain during the procedure and that there was blood on the soft curette Dr. Apfelbaum used in attempting to extract the bead, both of which are signs of a perforated eardrum. The following day, Dr. Stoker, an ear nose and throat specialist, examined Jacob and discovered blood in his ear, but could not observe the tympanic membrane. Several days later, Dr. Stoker put Jacob under general anesthesia and removed the bead. At that time, he observed that Jacob's eardrum had been perforated.

¶ 3 Mr. Eskelson sought to introduce expert testimony from Dr. Kim Bateman to establish that Dr. Apfelbaum departed from the standard of care in three ways. First, before Dr. Apfelbaum's final attempt to remove the bead—the attempt when he allegedly perforated Jacob's eardrum—he should have informed Mrs. Eskelson of the potential consequences of attempted extraction. Second, Dr. Apfelbaum should have stopped the procedure when Jacob became agitated and difficult to control. Third, by continuing to attempt to extract the bead, Dr. Apfelbaum caused Jacob unnecessary pain.

¶ 4 Dr. Apfelbaum moved to strike Dr. Bateman's testimony on the grounds that it was purely speculative and it failed to meet the requirements of Utah Rule of Evidence 702. Dr. Apfelbaum also moved for summary judgment arguing that if the court struck Dr. Bateman's testimony, Mr. Eskelson would be without the expert testimony necessary to establish medical malpractice. After a two and a half hour hearing, the district court granted the motion to strike, finding that Dr. Bateman's testimony did not comply with rule 702. Specifically, the district court found that Dr. Bateman's testimony was not based on any scientific, technical, or other scientific knowledge, that his testimony would not assist the trier of fact, and that his methods were not generally accepted by the relevant scientific community. The

district court then granted summary judgment in favor of Dr. Apfelbaum because Mr. Eskelson had no expert to establish that Dr. Apfelbaum breached the applicable standard of care.

## STANDARD OF REVIEW

¶ 5 "The trial court has wide discretion in determining the admissibility of expert testimony...." *State v. Hollen*, 2002 UT 35, ¶ 66, 44 P.3d 794 (internal quotation marks omitted); *see also State v. Gallegos*, 2009 UT 42, ¶ 12, 220 P.3d 136 (applying abuse of discretion review to district court's exclusion of expert testimony on relevancy grounds). Accordingly, we disturb the district court's decision to strike expert testimony only when it "exceeds the limits of reasonability." *Hollen*, 2002 UT 35, ¶ 66, 44 P.3d 794 (quoting *State v. Larsen*, 865 P.2d 1355, 1361 (Utah 1993)). Our review of the district court's exercise of its discretion "include[s] review to ensure that no mistakes of law affected a lower court's use of its discretion." *State v. Barrett*, 2005 UT 88, ¶ 17, 127 P.3d 682. Thus, if the district court erred in interpreting Utah Rule of Evidence 702 when it granted Dr. Apfelbaum's motion to strike, it did not act within the limits of reasonability, and we will not defer to the evidentiary decision. *See Carbaugh v. Asbestos Corp.*, 2007 UT 65, ¶ 7, 167 P.3d 1063 (finding an abuse of the district court's discretion when an evidentiary decision was based on an erroneous interpretation of the law).

¶ 6 "We review a district court's decision to grant summary judgment for correctness, granting no deference to the district court's conclusions, and we view the facts and all reasonable inferences in the light most favorable to the nonmoving party." *Bodell Const. Co. v. Robbins*, 2009 UT 52, ¶ 16, 215 P.3d 933.

## ANALYSIS

¶ 7 The district court excluded Dr. Bateman's testimony under Rule 702 of the Utah Rules of Evidence. Dr. Apfelbaum did not dispute that Dr. Bateman passed the initial qualification threshold under rule 702(a), and thus we assume that Dr. Bateman

possessed the requisite "knowledge, skill, experience, training, or education." Under Rule 702(b), the district court was required to determine if the specialized knowledge that formed the basis of Dr. Bateman's opinion was "reliable, ... based upon sufficient facts or data," and was "reliably applied to the facts of the case." The district court found that Dr. Bateman's testimony was not based on sufficient facts or data and therefore his specialized knowledge could not be reliably applied to the facts of the case. Additionally, the district court found that Dr. Bateman's testimony would not assist the trier of fact because "[u]nsupportable expert testimony is not helpful to the jury." After striking Dr. Bateman's testimony, the district court then granted Dr. Apfelbaum's motion for summary judgment on the grounds that Mr. Eskelson could not present a prima facie case of medical malpractice without expert testimony.[1] Thus, if the district court improperly excluded Dr. Bateman's expert testimony, it erred in granting Dr. Apfelbaum's motion for summary judgment.

¶ 8 We consider first whether Dr. Bateman based his testimony on reliable scientific, technical, or other specialized knowledge. We then consider whether Dr. Bateman supported his testimony with sufficient facts. Finally, after determining that the district court erred in excluding the testimony under Utah Rule of Evidence 702(b), we consider whether the court properly struck Dr. Bateman's testimony under rule 702(a) when it found that because the testimony was "un-supportable," it would not assist the trier of fact.

## I. THE DISTRICT COURT INTER-PRETED RULE 702 INCORRECTLY IN HOLDING THAT DR. BATE-MAN'S TESTIMONY DID NOT AP-PLY SCIENTIFIC KNOWLEDGE

¶ 9 Rule 702, as amended in 2007, requires the court to consider several factors to determine whether to admit expert testimony.[2] Rule 702(a) requires the court to consider whether expert testimony is necessary to assist the trier of fact and whether the proposed expert has the necessary "knowledge, skill, experience, training, or education" to provide such assistance to the trier of fact. After determining that the expert is so qualified, the court then turns to the reliability of the "scientific, technical, or other specialized knowledge" that serves as the basis for the expert's testimony. Utah R. Evid. 702(b).

¶ 10 Prior to the 2007 amendment, Rule 702 consisted only of subsection (a) with the first phrase omitted. Under that version of rule 702, the standard for determining the admissibility of technical or scientific expert testimony was that announced in *State v. Rimmasch.* 775 P.2d 388, 402–405 (Utah 1989). The *Rimmasch* standard first required the court to determine whether the party had met its threshold burden by examining

> the correctness of the scientific principles underlying the testimony, the accuracy and reliability of the techniques utilized in ap-

---

1. "To prove medical malpractice, a plaintiff must establish (1) the standard of care by which the [physician's] conduct is to be measured, (2) breach of that standard by the [physician], (3) injury that was proximately caused by the physician's negligence, and (4) damages.... [T]he plaintiff is required to prove the standard of care through an expert witness who is qualified to testify about the standard." *Jensen v. IHC Hosps., Inc.,* 2003 UT 51, ¶ 96, 82 P.3d 1076 (internal quotation marks omitted)(alteration in original).

2. Rule 702 of the Utah Rules of Evidence provides:
 (a) Subject to the limitations in subsection (b) if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
 (b) Scientific, technical, or other specialized knowledge may serve as the basis for expert testimony if the scientific, technical, or other principles or methods underlying the testimony meet a threshold showing that they (I) are reliable, (ii) are based upon sufficient facts or data, and (iii) have been reliably applied to the facts of the case.
 (c) The threshold showing required by subparagraph (b) is satisfied if the principles or methods on which such knowledge is based, including the sufficiency of facts or data and the manner of their application to the facts of the case, are generally accepted by the relevant expert community.

plying the principles to the subject matter before the court and in reaching the conclusion expressed in the opinion, and the qualifications of those actually gathering the data and analyzing it.

*Id.* at 403. *Rimmasch* then required that the court determined whether "the scientific principles or techniques [had] been properly applied to the facts of the particular case by qualified persons and [whether] the testimony [was] founded on that work." *Id.* ¶ 398 n. 7. Third, the *Rimmasch* standard required a determination that the scientific evidence be more probative than prejudicial as required by rule 403 of the Utah Rules of Evidence. *Id.* at 398 n. 8.

¶ 11 In amending rule 702, the court did not intend to make it more difficult to admit expert testimony, but rather to clarify the requirements for admission. Aspects of the *Rimmasch* test continue to be applicable under amended rule 702. For example, rule 702(b), like *Rimmasch*, requires a determination to determine whether a party has met its threshold burden to show the reliability of the principles that form the basis for the expert's testimony and the reliability of applying those principles to the facts of the case. And, similar to the *Rimmasch* standard, rule 702(c) allows the court to take judicial notice of principles that have been accepted by the relevant expert community.

¶ 12 The advisory committee notes make clear that the new rule 702 "assigns to trial judges a 'gatekeeper' responsibility to screen out unreliable expert testimony"—not just scientific expert testimony. Utah R. Evid. 702 advisory committee notes, ¶ 3. When applying the new rule 702, judges should approach expert testimony with "rational skepticism". *Id.* But the "degree of scrutiny [that should be applied to expert testimony by trial judges] is not so rigorous as to be satisfied only by scientific or other specialized principles or methods that are free of controversy or that meet any fixed set of criteria fashioned to test reliability." *Id.* Importantly, both subsections (b) and (c) require the plaintiff to make only a "threshold showing" of reliability. Utah R. Evid. 702(b)-(c).

¶ 13 In this case, Dr. Bateman's testimony satisfied rule 702 and should not have been excluded. In considering the scientific basis for Dr. Bateman's testimony, the district court found that it fell short of the requirements of 702(b). The district court first found that the scientific methodology underlying Dr. Bateman's testimony was not reliable because Dr. Bateman could not articulate a specific methodology. It then determined that Dr. Bateman's testimony was not based on specific facts and data because Dr. Bateman relied heavily on Mrs. Eskelson's deposition testimony. Specifically, the district court found that Dr. Bateman chose to believe only facts in the record that supported his argument that Dr. Apfelbaum caused the injury while disregarding testimony that Jacob was tearful and whiney before he arrived at Davis County Medical Center and that Dr. Apfelbaum did not observe a sudden indication of pain. Finally, in considering under rule 702(b)(iii) whether Dr. Bateman reliably applied scientific principles to the facts of the case, the district court found that Dr. Bateman could not do so because he did not use any scientific principles. In addition, the district court found that Dr. Bateman could not testify about Dr. Apfelbaum's breach of the standard of care because he based his testimony solely on Mrs. Eskelson's deposition testimony.

¶ 14 Each of these rulings by the district court constituted error. Specifically the district court erred in concluding that Dr. Bateman needed to identify a scientific methodology beyond his experience as a physician. It further erred in finding that Dr. Bateman's testimony was not based on sufficient facts. Finally, it erred in determining that Dr. Bateman's expert testimony could not be reliably applied to the facts of this case.

*A. Dr. Bateman Did Not Need to Identify a Specific Methodology in Order to Opine on the Cause of Jacob's Injuries*

¶ 15 Dr. Bateman's testimony regarding his experience as a physician, in dealing with similar situations as Jacob's, constitutes a threshold showing of reliability. In this case, amended rule 702 requires no more.

Under Utah Rule of Evidence 702(b)(I), the district court was required to determine whether the methods and principles underlying Dr. Bateman's specialized knowledge were reliable. What is required for a threshold showing of reliability will vary depending on the complexity of the particular case. In this case, the fact that Dr. Bateman had experience with the removal of foreign objects from the ears of children satisfies the threshold showing that his testimony was reliable. Identification of a methodology is not necessary where exposure to a nearly identical situation forms the basis of the expert's opinion. Because Dr. Bateman's expertise was unchallenged, his specialized knowledge met the threshold showing of reliability required for the admission of his expert testimony.

### B. Dr. Bateman Could Base His Opinion on Facts Alleged in Mrs. Eskelson's Deposition Testimony

 ¶ 16 The district court found that Dr. Bateman did not base his testimony on sufficient facts and data because he selectively relied on only certain testimony in the record to come to his opinion. This finding was erroneous. Although an expert cannot give opinion testimony that "flies in the face of uncontroverted physical facts also in evidence," an expert can rely on his own interpretation of facts that have a foundation in the evidence, even if those facts are in dispute. *Yowell v. Occidental Life Ins. Co.*, 100 Utah 120, 110 P.2d 566, 569 (1941). Indeed, we allow experts latitude to interpret the facts before them. *See State v. Schreuder*, 726 P.2d 1215, 1223 (Utah 1986) (allowing expert to base testimony on inadmissible facts based on the assumption that "the particular facts relied on will be trustworthy because the integrity and specialized skill of the expert will keep him or her from basing his or her opinion upon questionable matter"). "When … the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness

of facts underlying one expert's testimony." *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed.Cir.2003) (interpreting similar Federal Rule of Evidence 702)[3]; *see also Atkinson Warehousing & Distrib., Inc. v. Ecolab, Inc.*, 99 F.Supp.2d 665, 670 (D.Md. 2000)("[A]n opinion based upon a disputed fact may not be excluded simply because it pertains to an issue to be decided by the jury"); *TK–7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732 (10th Cir.1993) (allowing expert testimony based on disputed facts so long as there was evidence tending to establish the disputed fact in the record).

 ¶ 17 The district court suggested that because Dr. Bateman relied more heavily on the testimony of certain witnesses, he was thereby expressing on opinion as to the truthfulness of those witnesses in violation of Utah Rule of Evidence 608(a), which governs testimony relating to a witnesses' character for truthfulness. We disagree. An expert's decision to rely on the testimony of a particular witness does not constitute the expression of an opinion as to the credibility of that witness. Moreover, once Dr. Bateman's testimony is admitted at trial, Dr. Apfelbaum will have the opportunity to explore the factual basis for Mr. Bateman's testimony and point out the dispute over the facts on which he relies. In sum, the district court erred in finding that Dr. Bateman's testimony was not reliable because he based it on his interpretation of the facts at issue.

### C. Dr. Bateman's Testimony Reliably Applied His Experience to the Facts of This Case

 ¶ 18 Although the district court found that it need not reach rule 702(b)(iii), its erroneous determination that Dr. Bateman's specialized knowledge was not reliable is correctly interpreted as a determination under rule 702(b)(iii) that Dr. Bateman did not reliably apply his specialized knowledge to the facts of this case. Dr. Apfelbaum cites *Beard v. K–Mart Corp.*, 2000 UT App 285, 12

---

3. Although the federal rule differs from the Utah rule with regard to the procedure for determining the reliability of expert testimony, it does not necessarily follow that a federal gatekeeper judge would consider different factors from a state gatekeeper. Indeed, federal cases explaining that a gatekeeper judge does not have the latitude to strike expert testimony because it is based on disputed fact are not in conflict with Utah's requirements.

P.3d 1015, to support the district court's decision that Dr. Bateman's testimony was mere speculation and not sufficient to show causation. In *Beard*, the plaintiff's expert testified that the injuries the plaintiff sustained in a K–Mart parking lot could have been the cause of some subsequent medical problems, but did not say with any certainty that they actually did cause the problems. *Id.* ¶¶ 18–19. In fact, the expert listed a number of other potential causes of the plaintiff's injuries. *Id.* The court of appeals reversed the jury verdict for the plaintiff because the expert's testimony was insufficient to demonstrate a causal link between the plaintiff's injury and her subsequent medical problems. Because "[t]he expert medical testimony merely established a chronological relationship between the accident and her symptoms" without "linking the injury to the necessity of the surgery," the jury engaged in speculation rather than finding fact. *Id.* ¶ 20.

¶ 19 Unlike the expert testimony in *Beard*, Dr. Bateman's testimony did more than establish a chronological relationship between Jacob's visit to Dr. Apfelbaum and his perforated eardrum. Rather, based on his specialized knowledge in removing foreign objects from childrens' ears, Dr. Bateman testified that a sudden instance of pain accompanies a perforated eardrum. As a result of his analysis of the evidence, he identified Dr. Apfelbaum's examination as the point in time when this sudden instance of pain occurred. This testimony clearly applies Dr. Bateman's specialized knowledge to the facts in evidence in a way that satisfies the threshold showing of reliability required by rule 702.

## II. THE DISTRICT COURT ERRED IN FINDING THAT DR. BATEMAN'S TESTIMONY WOULD NOT ASSIST THE TRIER OF FACT

¶ 20 A district court may admit expert testimony only if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Utah R. Evid. 702(a); *see also State v. Gallegos*, 2009 UT 42, ¶ 35, 220 P.3d 136. An expert's testimony will not assist the trier of fact if the evidence is cumulative or more prejudicial than probative. *See Gallegos*, 2009 UT 42, ¶¶ 35–38, 220 P.3d 136. We have held that expert testimony assists the trier of fact when the expertise is "beyond the common knowledge of ordinary jurors and usually cannot be effectively elicited through cross-examination alone." *State v. Clopten*, 2009 UT 84, ¶ 32, 223 P.3d 1103.

¶ 21 In this case, the district court found that the evidence would not assist the trier of fact because it did not meet the reliability requirements of rule 702. However, as discussed above, the court erred in determining that Dr. Bateman's testimony was not admissible under rule 702. The testimony regarding the applicable standard of care, the breach of that standard, and the resulting damages would enhance the jurors' understanding of the medical procedures at issue and would thereby assist the trier of fact. The district court therefore erred in excluding such testimony.

## CONCLUSION

¶ 22 The district court erred in excluding Dr. Bateman's testimony under rule 702(b). Dr. Bateman's specialized knowledge was reliable, his testimony was based on facts in evidence, and he reliably applied his specialized knowledge to those facts. Because the court erred in excluding Dr. Bateman's testimony, it also erred in granting summary judgment in favor of Dr. Apfelbaum based on the lack of expert testimony. We accordingly reverse and remand for proceedings consistent with this opinion.

¶ 23 Chief Justice DURHAM, Associate Chief Justice DURRANT, and Justice NEHRING concur in Justice PARRISH's opinion.

¶ 24 Justice WILKINS concurred in the court's original opinion but retired prior to the issuance of this amended opinion.