2019 UT App 14

## THE UTAH COURT OF APPEALS

RICHARD TAYLOR
AND DEANNE TAYLOR,
Appellants,
*v.*
UNIVERSITY OF UTAH, UNIVERSITY HOSPITAL,
AND UNIVERSITY OF UTAH PHYSICAL
MEDICINE AND REHABILITATION CLINIC,
Appellees.

Opinion
No. 20170678-CA
Filed January 17, 2019

Third District Court, Salt Lake Department
The Honorable Robert P. Faust
No. 140903769

James W. McConkie, Bradley H. Parker, and
W. Alexander Evans, Attorneys for Appellants

Curtis J. Drake and Parker A. Allred,
Attorneys for Appellees

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and DAVID N.
MORTENSEN concurred.

HAGEN, Judge:

¶1      Richard Taylor and Deanne Taylor (the Taylors) appeal
the district court's decision to exclude the testimony of their
causation expert in this medical malpractice case. The district
court ruled that the Taylors had not made a threshold showing
of reliability because the expert testimony was based on
insufficient facts and data. Because neither the expert's
experience nor the relevant medical literature provided a

sufficient factual basis to support the expert's conclusion about causation, we affirm.

BACKGROUND

¶2     The Taylors' daughter (the patient) was diagnosed at a young age with a neurological disorder for which part of her treatment was to receive intrathecal baclofen, a drug administered by a catheter and pumped into the thecal sac located around the spinal cord. In 2013, a neurosurgeon replaced the patient's pump, but not the catheter connected to the pump.

¶3     About one month later, the patient experienced increased spasticity in her legs, which can be a side effect of baclofen withdrawal. The patient received an oral dose of baclofen in an attempt to reduce the spasticity. A physician reassessed the patient a few hours later, determined that there had been no change of symptoms, and continued the oral dosages of baclofen. The patient also underwent an x-ray examination, which did not show any obvious problems with the pump or catheter. The physician instructed the patient to return the following day for further evaluation.

¶4     On April 18, 2013, the patient "underwent a dye and rotator study of the pump and catheter," but the study showed no obvious signs of a problem. Nevertheless, the physician "thought an undetected problem with the pump and catheter might still be possible." At the same time, the patient had difficulty keeping down the oral doses of baclofen due to vomiting. After discussing the patient's medical history and symptoms with the neurosurgeon, the physician recommended that the patient undergo surgery to replace both the pump and catheter. The following day, the patient underwent the replacement surgery and her intrathecal baclofen dosage was reinstated. According to her sister, the patient was "back to herself" by April 20, 2013.

¶5     In early May, a few weeks after the baclofen pump and catheter were replaced, the patient began exhibiting "manic-like, psychotic behavior." The Taylors took the patient to a different doctor (the expert) to monitor the patient's baclofen treatment. Initially, the expert concluded that the patient's "manic-like behavior was caused by baclofen overdose" and, at the expert's "direction, all baclofen was stopped by late May 2013." The expert later concluded that the patient's change in behavior was due to baclofen withdrawal rather than overdose.

¶6     The Taylors assert that the patient suffers from a permanent neurological disorder, encephalopathy, and allege that the injury was caused by baclofen withdrawal that occurred between April 18, 2013, and April 19, 2013, before the pump and catheter were replaced. The Taylors sued the University of Utah, University Hospital, University of Utah Physical Medicine and Rehabilitation Clinic, and the agents, employees, and staff employed with those institutions that were involved in the patient's baclofen treatment (collectively, the Defendants). To support their theory of causation, the Taylors sought to present expert testimony at trial. The expert's testimony would explain that her theory of causation was the following sequence of events: "[b]aclofen withdrawal caused a metabolic disturbance, which caused encephalopathy, which produced months-long hallucinations and other abnormal behavior, resulting in or causing permanent memory and cognitive function damage."

¶7     After deposing the expert, the Defendants filed a motion in limine to exclude the expert's testimony, arguing that the testimony was not based on medical literature or her personal experience and therefore could not satisfy the threshold showing of reliability under rule 702 of the Utah Rules of Evidence. The expert conceded in her deposition that "there is not a single reported case of baclofen withdrawal in which the patient remained stable throughout the episode and went on to suffer permanent neurological injury" and that she "has never seen a patient experience the injuries that [the patient] claims to have

suffered." The expert also conceded that symptoms of baclofen withdrawal generally subside within forty-eight hours after the baclofen levels are reinstated and that baclofen withdrawal does not result in permanent injury if the baclofen levels are properly reinstated. The Defendants argued that, as a result, there "are no facts or data to support [the expert's] opinion" and that her proposed testimony is "the very type of unreliable testimony that Rule 702 is intended to prohibit."

¶8     The district court agreed with the Defendants and excluded the expert's testimony. The court concluded that, because the expert "admits she has never seen [this injury] in her practice" and has failed to provide medical literature "to support the argument that encephalopathy—whether caused by a metabolic disturbance or something else—can last more than 48 hours after therapeutic levels of baclofen are restored," she "does not have facts and data sufficient upon which to base her opinions or to employ her method for evaluating the causal connection in this case."

¶9     The Taylors appeal.

ISSUE AND STANDARD OF REVIEW

¶10    The Taylors contend the district court erred in excluding the expert's "opinions on proximate cause pursuant to Rule 702 of the Utah Rules of Evidence on the ground that her opinions were not based on facts and data sufficient to satisfy the threshold showing of reliability."[1] "We review a district court's

---

1. The Taylors also contend the expert's testimony should not have been excluded because the "principles and methods" underlying her opinion were reliable. Specifically, they argue that the expert's opinion on causation was based upon "logical deduction," which is a "standard technique[]" that is "generally accepted by the relevant community of medical experts." But the

(continued…)

decision to admit or exclude expert witness testimony for an abuse of discretion and will not reverse that decision unless it exceeds the limits of reasonability." *KTM Health Care Inc. v. SG Nursing Home LLC*, 2018 UT App 152, ¶ 28 (quotation simplified).

ANALYSIS

¶11 We are asked to determine whether the district court correctly ruled that neither the expert's experience nor medical literature supported the expert's opinion regarding causation under rule 702(b) or 702(c) of the Utah Rules of Evidence.

¶12 District courts have "wide discretion to determine whether expert testimony is admissible" under rule 702. *KTM Health Care Inc. v. SG Nursing Home LLC*, 2018 UT App 152, ¶ 59 (quotation simplified). The role of the district court is to serve as a "gatekeeper" and "screen out unreliable expert testimony." *Eskelson v. Davis Hosp. & Med. Center*, 2010 UT 59, ¶ 12, 242 P.3d 762 (quotation simplified). District courts should therefore "approach expert testimony with rational skepticism." *Id.* (quotation simplified).

¶13 Rule 702 of the Utah Rules of Evidence governs the admissibility of expert witness testimony. An expert who is qualified "by knowledge, skill, experience, training, or education

_____

(…continued)

district court did not exclude the expert's testimony on the basis that her principles and methods were not reliable. Instead, the court concluded that the expert lacked sufficient facts and data "upon which to base her opinions or to employ her method for evaluating the causal connection in this case." In other words, the court did not determine that "logical deduction" is necessarily an unreliable method, only that the expert lacked sufficient facts and data to employ such a method.

may testify in the form of an opinion . . . if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Utah R. Evid. 702(a). Before admitting such testimony, the judge must determine that the proponent has made a threshold showing of reliability. *State v. Lopez*, 2018 UT 5, ¶ 20, 417 P.3d 116.

¶14 The threshold showing of reliability can be satisfied "if the underlying principles or methods, including the sufficiency of facts or data and the manner of their application to the facts of the case, are generally accepted by the relevant expert community." Utah R. Evid. 702(c). Alternatively, the threshold showing can be met "by establishing that the principles underlying [the expert's] testimony are 'reliable, . . . based upon sufficient facts or data, and . . . have been reliably applied to the facts.'" *Lopez*, 2018 UT 5, ¶ 22 (quoting Utah R. Evid. 702(b)). "What is required for a threshold showing of reliability will vary depending on the complexity of the particular case." *Eskelson*, 2010 UT 59, ¶ 15. For example, an expert witness testifying "regarding his experience as a physician[] in dealing with similar situations" as the patient in the underlying case does not need to identify a specific methodology to opine on causation of the patient's injuries so long as the expert's "exposure to a nearly identical situation forms the basis of the expert's opinion." *Id.*

¶15 Here, the district court ruled that the Taylors had not made the requisite threshold showing under rule 702(b) because the expert's opinion was not "based upon sufficient facts or data." Utah R. Evid. 702(b)(2); *see also id.* R. 702(c) (providing that, where the threshold showing is based on general acceptance in the relevant expert community, "the sufficiency of facts or data" must also be generally accepted). We agree. Neither the expert's experience nor the medical literature provided a sufficient factual basis on which to base her opinion that the baclofen withdrawal caused the patient's injury.

¶16    The Taylors sought to offer the expert's opinion of causation based on her experience treating other patients with baclofen withdrawal. Relying on her experience, the expert claimed to know that baclofen withdrawal can cause metabolic disturbances. She also claimed to know that metabolic disturbances can cause permanent neurological injury, such as encephalopathy. Employing "logical deduction," the expert concluded that encephalopathy can be caused by baclofen withdrawal. Although such "logical deduction" may be a reliable method when supported by sufficient facts or data, the expert conceded in her deposition that "[n]one" of her patients "have suffered any type of permanent injury from an episode of [b]aclofen withdrawal . . . [or] overdose." Thus, her own experience did not provide her with "exposure to a nearly identical situation" to form the basis of her opinion. *See Eskelson*, 2010 UT 59, ¶ 15.

¶17    Nor did the expert provide any supporting medical literature documenting examples of patients suffering permanent encephalopathy caused, either directly or indirectly, by baclofen withdrawal when the baclofen level was reinstated, as it was in this case. To the contrary, the expert stated that she had "looked for" but was not "aware of any case similar to [the patient's] reported anyplace in the [medical] literature." Further, the expert conceded that, according to medical literature, "patients who suffer [baclofen] withdrawal typically have symptoms resolved within 48 hours of having [b]aclofen levels reinstituted." In fact, "there is not a single reported case of baclofen withdrawal in which the patient remained stable throughout the episode and went on to suffer permanent neurological injury," such as encephalopathy.

¶18    Because the expert's opinion regarding causation of the patient's injuries was not supported by any personal experience or medical literature, the district court did not exceed its discretion in excluding the expert's testimony for lack of sufficient facts and data.

CONCLUSION

¶19 We conclude the district court did not exceed its discretion when it excluded the expert's testimony for lack of sufficient facts or data. Accordingly, we affirm.

_____