# 2021 UT App 2

## THE UTAH COURT OF APPEALS

PETER O. PHILLIPS AND PDNULEBAKS UTAH LLC,
Appellants and Cross-appellees,
*v.*
GREGORY N. SKABELUND AND S&S ACRES LLC,
Appellees and Cross-appellants,
and
PEOPLE'S INTERMOUNTAIN BANK AND
CACHE TITLE COMPANY INC.,
Appellees.

Opinion
No. 20190552-CA
Filed January 7, 2021

Second District Court, Ogden Department
The Honorable Michael D. DiReda
No. 160903990

Adam S. Affleck, Attorney for Appellants

Joseph M. Chambers and J. Brett Chambers,
Attorneys for Appellees and Cross-appellants

Bradley L. Tilt and Sara E. Bouley, Attorneys for
Appellee People's Intermountain Bank

Dustin Del Ericson, Attorney for Appellee
Cache Title Company Inc.

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER AND KATE APPLEBY
concurred.

MORTENSEN, Judge:

¶1　This case primarily arises out of a trustee's sale, but there is a significant backstory. Peter O. Phillips and Pdnulebaks Utah LLC (collectively, Appellants) sued Gregory N. Skabelund and

S&S Acres LLC (S&S) (collectively, Cross-appellants), Cache Title Company Inc. (Cache Title or Trustee), and People's Intermountain Bank (Bank) (collectively, Appellees) to set aside the sale of certain property and the trustee's deed thereto. Appellants assert a catalog of claimed errors stemming from orders resolving a motion to dismiss and multiple motions for summary judgment. Cross-appellants relatedly appeal certain orders to provide alternative grounds to sustain the court's final judgement in their favor. We affirm the district court's entries of judgment in favor of Appellees.

BACKGROUND[1]

¶2    In April 2010, Phillips, an experienced real-estate entrepreneur, sought a $140,000 bridge loan[2] from Skabelund, his long-time legal counsel. The loan was backed by a promissory note and secured by a trust deed against certain property (Property) held by Phillips. Skabelund prepared the

---

1. "[W]hen reviewing a grant of summary judgment, we recite the disputed facts in a light most favorable to the nonmoving party." *Begaye v. Big D Constr. Corp.*, 2008 UT 4, ¶ 5, 178 P.3d 343. Similarly, in reviewing a grant of judgment independent of the motion, we view the facts in a light most favorable to the party against whom judgment was entered. *See Callioux v. Progressive Ins. Co.*, 745 P.2d 838, 840 (Utah Ct. App. 1987).

2. "A bridge loan is a short-term loan that is used to cover costs until more permanent financing is arranged or to cover a portion of costs that are expected to be covered by an imminent sale. Bridge loans typically have terms of up to one year, have relatively high interest rates and are usually backed by some form of collateral, such as real estate or inventory." *Cougar Canyon Loan, LLC v. Cypress Fund, LLC*, 2019 UT App 47, ¶ 1 n.1, 440 P.3d 884 (cleaned up).

note and the trust deed, and loaned Phillips the money. Cache Title was named trustee.

¶3 Shortly after executing the trust deed and promissory note, Phillips conveyed the Property, subject to the trust deed, to an entity designed to hold the Property, designated as Pdnulebaks ("P" for Phillips and "Skabelund" written in reverse). Skabelund formed Pdnulebaks as a member managed company, and its original articles of organization reflected that Skabelund was the sole "member/manager."

¶4 On October 21, 2010, Phillips defaulted on the loan. Thereafter, Phillips and Skabelund had a falling out. In March 2011, Skabelund engaged Trustee to commence non-judicial foreclosure of the Property. On May 24, 2011, Trustee recorded a notice of default to begin that process.

¶5 On November 9, 2011, Phillips filed for bankruptcy. As part of that proceeding, Phillips listed among his assets "contingent and unliquidated claims" against Skabelund for "breach of contract, breach of fiduciary duty, conversion, malpractice, fraud, fraudulent misrepresentation, rescission and other potential claims." The bankruptcy case was dismissed three months later.

¶6 On March 30, 2012, Trustee recorded a notice of a trustee's sale to occur on a later date, as required by Utah's Trust Deed Act and the trust deed to the Property. Upon receipt of the notice, Phillips challenged the sale and threatened Skabelund with suit for breach of fiduciary duties to Pdnulebaks and himself. Skabelund instructed Trustee to postpone the sale and assigned the trust deed to S&S.[3] As directed, Trustee postponed

---

3. At the time Skabelund assigned the note and trust deed to S&S, he held a sixty-three percent membership interest in S&S

(continued…)

the sale for thirty days by public declaration at the time and place of the initially scheduled sale. Thereafter, Phillips demanded the Trustee's sale be canceled, and he recorded a Notice of Interest on the Property, asserting he was both the equitable owner of Pdnulebaks and the titular owner of the Property. At S&S's direction, Trustee again postponed the sale by public declaration. Ultimately, the Trustee's sale was postponed twelve times, each time by public declaration, for a total of 276 days; no single postponement exceeded forty-five days.

¶7 During the months between the initial and final foreclosure sales, the parties entered into a settlement agreement (Settlement Agreement) to resolve the foreclosure and related claims. The Settlement Agreement provided that "Phillips would release his claims relating to Skabelund's conflicted status vis-à-vis Pdnulebaks and the Trustee's sale in consideration for Skabelund transferring whatever rights he had in Pdnulebaks to Phillips . . . and then, following such transfer, giving Pdnulebaks . . . the normal non-judicial foreclosure time before Skabelund would schedule the trustee's sale." At some point, Skabelund provided Phillips with the information necessary to record his membership status in Pdnulebaks. The Property was sold at the Trustee's sale 152 days after the Settlement Agreement.

¶8 On December 21, 2012, S&S purchased the Property at the Trustee's sale by a credit bid of $270,823.29—representing the amount owed under the note and trust deed. By mid-January 2013, Appellants had knowledge of the Trustee's sale. On December 30, 2013, S&S obtained a loan of $180,000 from Bank, by a trust deed pledging the Property as collateral. In January

---

(…continued)

and was its manager. Despite the assignment, Skabelund, acting as S&S's agent, continued to direct the non-judicial foreclosure.

2014, Phillips recorded his membership in Pdnulebaks and renewed its expired status as a business entity.

*Procedural History*

¶9     On December 20, 2015, Appellants filed the underlying action. Appellants' original complaint sought to set aside the trustee's deed for violations of Utah Code section 57-1-27(2), which sets out the requirements for additional notice when a trustee's sale is postponed beyond its originally noticed date. That claim was dismissed by order ruling on a motion made pursuant to rule 12(b)(6) of the Utah Rules of Civil Procedure (First Order). During the pendency of the rule 12(b)(6) motion, Appellants moved to file an amended complaint, adding new claims and bolstering their previous claim. The motion to file an amended complaint was denied (Second Order).

¶10     Thereafter, Appellants moved for, and were permitted to submit, a third amended complaint, specifying eight claims: (1) malpractice for the trust deed and note against Skabelund, (2) malpractice in the formation of Pdnulebaks against Skabelund, (3) fraud in the formation of Pdnulebaks against Skabelund, (4) breach of the Settlement Agreement against S&S, (5) fraud relating to the postponement of the Trustee's sale against Skabelund and S&S, (6) breach of fiduciary duty as to Pdnulebaks against Skabelund, (7) a claim against S&S and Bank to set aside the Trustee's sale, and (8) breach of the trust deed against Cache Title.

¶11     The litigation proceeded through discovery, and multiple motions for summary judgment followed. In an order resolving cross-motions for summary judgment from Appellants and Bank, the court granted judgment to Bank on the seventh claim (Third Order). In response to a later motion, the court granted summary judgment in favor of S&S on all claims encompassed within the Settlement Agreement and subsequently granted judgment in favor of S&S and Skabelund on claims four and six

(Fourth Order). The court later determined the Settlement Agreement also encompassed the first, second, third, fifth and seventh causes of action and granted summary judgment on each claim in favor of Skabelund and S&S (Fifth Order). In a separate order issued that same day, the court granted a motion to exclude Appellants' valuation expert and denied Appellants' motion to supplement that expert's report (Sixth Order). In response to the exclusion of Appellants' expert, Cache Title moved for, and was granted, summary judgment on the remaining eighth claim for breach of the trust deed. The court entered final judgment in January 2019.

¶12   The following month, Appellants moved to alter or amend three orders: the Fourth and Fifth Orders, which granted summary judgment to Skabelund and S&S, and the Sixth Order, which excluded Appellants' expert and denied the motion to supplement the expert's report. The court issued an order (Seventh Order) denying the motion but amending its prior orders. In the Seventh Order, the court amended the rationale used in the Fourth and Fifth Orders, stating it erred in determining that summary judgment was warranted based on the resolution reached under the Settlement Agreement. In lieu thereof, the court determined that summary judgment was still appropriate based on the exclusion of Appellants' expert, as ruled in the Sixth Order. The court gave each party thirty days to respond to its Seventh Order. Appellants did not offer a response.

¶13   Appellants appeal, and S&S and Skabelund cross-appeal.


ISSUES AND STANDARDS OF REVIEW

¶14   Appellants first contend that the district court erred in dismissing their claim that the Trustee's sale violated the Utah Trust Deed Act's notice-of-postponement provision in Utah Code section 57-1-27(2). But Appellants fail to challenge an

independent basis for dismissal relied on by the district court.[4] And we have "no choice except to affirm," *Kendall v. Olsen*, 2017 UT 38, ¶ 9, 424 P.3d 12; *see also id.* ¶ 12 (stating that under "our rules of appellate procedure . . . we will not reverse a ruling of the district court that rests on independent alternative grounds where the appellant challenges only one of those grounds" (cleaned up)), because we "have no occasion to reach the merits of the[] claim[] here," *id.* ¶ 9.

¶15 Appellants next contend that the court erred in its Third Order, granting summary judgment to Bank on the seventh claim, on two points relating to the court's application of the law.[5] "We review the district court's ultimate grant or denial of

---

4. Appellants challenge the First Order by asserting that the court erred as a matter of statutory interpretation in ruling that the Trustee's sale complied with Utah Code section 57-1-27(2), and as a result also erred by not reaching the determination of whether the sale was void ab initio as against public policy. But the district court also dismissed the statutory claim because the claim lacked the specific allegations necessary to set aside the Trustee's sale. This defect in the claim persisted in the amended complaint denied by the Second Order. On appeal, Appellants do not address this defect, nor do they mention the independent basis for dismissal.

5. Not naming the particular ruling they seek to overturn, Appellants also argue that because Trustee breached the notice provision of the trust deed, the deed is voidable even if they cannot demonstrate prejudice. To demonstrate preservation of this issue, Appellants cite two separate motions for summary judgment. The first motion raised this claim but it was dismissed as "obsolete" because the court granted a motion to dismiss the relevant claim from Appellants' first complaint and denied

(continued…)

summary judgment for correctness. We give no deference to the district court's legal conclusions and consider whether the court correctly decided that no genuine issue of material fact existed." *Far West Bank v. Robertson*, 2017 UT App 213, ¶ 15, 406 P.3d 1134 (cleaned up).[6]

---

(…continued)
Appellants' motion for leave to file a second amended complaint. Appellants do not challenge those rulings on appeal.

The second motion for summary judgment did not raise the issue presented on appeal. In that motion, Appellants argued that "a trustee's deed is voidable and may be set aside (1) if there is a defect in trustee's sale, (2) that was prejudicial to the trustor/owner, and (3) no rights of a bona fide purchaser have intervened." (Citing *Bank of America v. Adamson*, 2017 UT 2, 391 P.3d 196.) Appellants point us to no place in the record where they raised and argued the issue presented on appeal in a way that the district court had an opportunity to rule on it. It is therefore unpreserved. *See Issertell v. Issertell*, 2020 UT App 62, ¶ 21, 463 P.3d 698 ("Parties are required to raise and argue an issue in the district court in such a way that the court has an opportunity to rule on it. When a party fails to raise and argue an issue in the district court, it has failed to preserve the issue, and an appellate court will not typically reach that issue absent a valid exception to preservation." (cleaned up)). Appellants make no argument for our consideration of the unpreserved claim. Accordingly, we decline to address it. *See State v. Johnson*, 2017 UT 76, ¶ 19, 416 P.3d 443 (observing that a party must establish the applicability of a preservation exception to persuade an appellate court to reach an unpreserved issue).

6. In its responsive brief, Bank asserts that we could affirm the district court's ruling on the alternative ground of laches.

(continued…)

¶16    Appellants additionally contend that the court erred in its Sixth Order, which excluded Appellants' valuation expert and denied the motion to supplement the expert's report. We "review discovery orders for abuse of discretion and will not find abuse of discretion absent an erroneous conclusion of law or where there is no evidentiary basis for the trial court's ruling." *Arreguin-Leon v. Hadco Constr. LLC*, 2018 UT App 225, ¶ 15, 438 P.3d 25 (cleaned up). Additionally, a district court's decisions regarding the admissibility of expert testimony "are reviewed under an abuse of discretion standard" and "we will not reverse a decision to admit or exclude expert testimony unless the decision exceeds the limits of reasonability." *Id.* ¶ 15 n.4 (cleaned up).

¶17    Appellants next argue that the court erred in its Seventh Order, in which it amended its rationale but retained the ultimate ruling reached in the Fourth and Fifth Orders dismissing claims one through seven against Skabelund and S&S. We review a court's entry of summary judgment independent of the motion under rule 56(f) of the Utah Rules of Civil Procedure for correctness. *Cf. Far West Bank*, 2017 UT App 213, ¶ 15.

¶18    Cross-appellants counter by arguing that the statute of limitations is an alternative ground to affirm the dismissal of certain claims. They contend that the court erred by rejecting that defense in their motion to dismiss, in opposition to Appellants' third amended complaint, and in their summary judgment motion. The application of a statute of limitations is a question of law that we review for correctness. *See Moshier v. Fisher*, 2019 UT 46, ¶ 6, 449 P.3d 145. We also review summary

_____

(…continued)
Because we otherwise resolve this issue, we do not address Bank's laches claim.

judgment and orders on rule 12(b)(6) motions to dismiss for correctness, but under different standards. *See Pinder v. Duchesne County Sherriff*, 2020 UT 68, ¶ 31. "Summary judgment is proper only if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* (cleaned up). "But dismissal under rule 12(b)(6) is proper only if—accepting the plaintiff's description of facts alleged in the complaint to be true—the plaintiff can prove no set of facts in support of his claim." *Id.* (cleaned up).

¶19 Lastly, Cross-appellants seek attorney fees on appeal. "When a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal." *Telegraph Tower LLC v. Century Mortgage LLC*, 2016 UT App 102, ¶ 52, 376 P.3d 333 (cleaned up).

ANALYSIS

¶20 We begin by reviewing Appellants' challenge to the district court's Third Order denying their motion for summary judgment on their seventh claim. We then review Appellants' claims concerning their valuation expert. We next address Appellants' and Cross-appellants' contentions relating to the Seventh Order granting summary judgment against Appellants on an amended rationale. We conclude by reviewing Cross-appellants' claim for attorney fees on appeal.

I. Third Order Denying Summary Judgment to Appellants

¶21 Appellants contend that the district court erred in denying their motion for summary judgment on the seventh claim, arguing that the court erroneously looked for prejudice only in whether the bidding was chilled and an inadequate price obtained at the Trustee's sale. Appellants further argue that if that measure of prejudice is appropriate here, such prejudice

"should be presumed where there is a notice failure." We address each argument in turn.

## A

¶22     To succeed in their contention that the court erred by denying their motion for summary judgment on their seventh claim, Appellants, as the moving party with the burden of proof at trial on this issue, must show that they established each element of their claim as part of demonstrating entitlement to judgment as a matter of law. *See* Utah R. Civ. P. 56(a); *see also Salo v. Tyler*, 2018 UT 7, ¶ 2, 417 P.3d 581. Appellants begin that undertaking by arguing, in effect, that the court applied the law too narrowly in determining whether they met the element of prejudice to establish a voidable deed. We disagree.

¶23     The district court ruled that to prove the trustee's deed voidable, Appellants had to show prejudice by "demonstrat[ing] that the defect resulted in chilling the bidding and causing an inadequacy of price." (Citing *Far West Bank v. Robertson*, 2017 UT App 213, 406 P.3d 1134.) Appellants contend that "is not the only way in which prejudice can be shown." In support of their proposition, Appellants cite *Bank of America v. Adamson*, 2017 UT 2, 391 P.3d 196, to suggest that the focus should be on whether the defect in the notice prevented the trustor from protecting his property interests.

¶24     In *Adamson*, our supreme court addressed the question of how to remedy a trustee's violation of the requirement to maintain an office in Utah under Utah's Trust Deed Act. 2017 UT 2, ¶ 1. *Adamson* clarified the difference among deeds that are void, voidable, or valid. *Id.* ¶¶ 15, 20. In so doing, the court held that in most cases the time for the trustor to assert rights in the property is "before the trustee's sale" occurs because "the need for finality is at its apex" when "title to real property is at issue." *Id.* ¶¶ 16–17 (cleaned up). The court instructed that after a trustee's sale is accomplished, a deed will not be voidable

"unless the interests of the debtor were sacrificed or there was some attendant fraud or unfair dealing" reaching "unjust extremes." *Id.* ¶¶ 20, 22 (cleaned up). Thus, to prove a deed is voidable, "the trustor must show evidence of fraud or other unfair dealing, or that a defect prejudiced the trustor." *Id.* ¶ 34.

¶25 Neither fraud nor unfair dealing was asserted as a basis for Appellants' summary judgment motion, so, the inquiry here is limited to whether Appellants suffered prejudice caused by the defect alleged. To that end, Appellants assert that *Adamson* indicates they may show prejudice in a trustee's sale by proving the defect affected their ability to protect their rights or interests in the property. *See id.* ¶¶ 23–24. But, the supreme court has also more particularly specified that "[d]efects in the notice of foreclosure sale that will authorize the setting aside of the sale must be those that would have the effect of chilling the bidding and causing an inadequacy of price," *Concepts, Inc. v. First Sec. Realty Services, Inc.*, 743 P.2d 1158, 1159 (Utah 1987) (per curiam), the objective of the notice requirements being to prevent a sacrifice of the property by enabling the trustor to timely act, *see id.* The court in *Adamson* did not depart from that holding. And *Far West Bank v. Robertson*, 2017 UT App 213, 406 P.3d 1134, which the district court relied on, reiterated the *Concepts* holding, stating "any notice-of-sale irregularities a trustor may allege . . . are immaterial if the trustor does not demonstrate that there was a resulting effect of chilling the bidding and causing an inadequacy of price." *Id.* ¶ 37 (cleaned up); *accord Concepts*, 743 P.2d at 1159.

¶26 Because the holding of *Concepts* remains binding precedent, the district court correctly denied Appellants' motion for summary judgment on their seventh claim after determining that material facts remained in dispute regarding any effect of chilling the bidding and inadequacy of price.

B

¶27 Appellants further challenge the court's denial of their motion for summary judgment, arguing that even if prejudice must be shown by an effect of chilling the bidding thereby producing an inadequate price, this "should be presumed where there is a notice failure." But we cannot agree because Appellants' "argument that the flaw in the notice . . . invalidated the sale . . . perverts and uses as a sword a statute that was meant to shield the property rights of a trustor." *See Concepts, Inc. v. First Sec. Realty Services, Inc.*, 743 P.2d 1158, 1160 (Utah 1987) (per curiam).

¶28 Appellants assert that "public advertisement was not given at all" and that "the chilling effect on bidding and inadequacy of price should be deemed proven." Appellants overstate their case. The parties agree that the initial notice was properly given. They also agree that the trust deed limited postponements for a trustee's sale to one day unless the sale was fully re-noticed via writing, publication, posting, and mailing but that only oral postponements were provided.[7] Accordingly,

---

7. Notably, Appellants were aware of at least the first five oral postponements, meaning they had actual notice of the sale to that point. It seems that Appellants' lack of diligence in continuing to attend the postponed sales—presumably owing to the Settlement Agreement—prevented them from being aware of remaining postponements and attending the final sale. Importantly, Appellants took no action under the trust deed or statute during the series of oral postponements to try to stop the Trustee's sale from occurring, all despite having actual knowledge that only oral notices of postponement were being given. *See Bank of Am. v. Adamson*, 2017 UT 2, ¶ 16, 391 P.3d 196 ("In most cases, Utah law requires that a trustor assert her rights before the trustee's sale." (cleaned up)).

this case is not about a notice failure but a notice defect. Appellants relied on the defect in seeking summary judgment and contended then, as they do now, that prejudice should be presumed given the defective notice. While Appellants' concerns are reasonable, Utah law dictates otherwise.

¶29 We understand the burdens which a lack of notice of a trustee's sale can cause a trustor. The notice requirement is designed "to protect the rights of trustors to challenge the foreclosure prior to the sale," *Bank of Am. v. Adamson*, 2017 UT 2, ¶ 15, 391 P.3d 196, "and serve to ensure the fairness of the sale through competitive bidding, thus securing the highest possible prices," *Concepts*, 743 P.2d at 1160 (cleaned up). But the potential disadvantages of defective notice do not always follow. That is why our courts have required a showing that prejudice also resulted. And rather than presume that a defect causes prejudice, "absent evidence to the contrary, . . . [we] presume that the sale was regular." *Far West Bank v. Robertson*, 2017 UT App 213, ¶ 36, 406 P.3d 1134 (cleaned up). It is incumbent on the trustor to show prejudice in the sale, *see Concepts*, 743 P.2d at 1159, a burden which is "much higher" once the sale has taken place, *see Adamson*, 2017 UT 2, ¶ 18.

¶30 Utah courts require a showing of prejudice because courts are concerned with whether the trustor's property has been sacrificed by a defect denying the trustor the opportunity to act and protect its rights and interests in the property. *See id.* ¶ 22 ("A sale once made will not be set aside unless the interests of the debtor were sacrificed." (cleaned up)). If not, "immaterial errors and mistakes will not affect the sufficiency of the notice or the sale made pursuant thereto." *Concepts*, 743 P.2d at 1159; *see also Adamson*, 2017 UT 2, ¶ 24 ("If the defect does not cause prejudice, then the error is considered inconsequential."). For this reason, our supreme court has indicated that a "failure to strictly comply with notice requirements [is] not sufficient to set aside [the] trustee's deed without [a] showing of prejudice."

*Adamson*, 2017 UT 2, ¶ 24 (cleaned up) (citing *Timm v. Dewsnup*, 2003 UT 47, ¶¶ 34–37, 86 P.3d 699).

¶31   Because a sale could be accomplished with defective notice but not run afoul of the trustor's rights and interests, or still provide the trustor with an adequate price for the property (or as S&S contended below, a price even above its value),[8] we cannot presume the trustor is consequentially prejudiced by the defect, especially when the need for finality in the property's title is at its apex. *See id.* ¶ 17. Rather, the trustor must articulate and prove the "unjust extremes" compelling the court to set aside the sale that has been accomplished. *Id.* ¶ 20 (cleaned up). To prevail on a claim to set aside a trustee's sale, the trustor must show actual harm resulting from the defect; prejudice cannot be presumed.

¶32   Appellants were required to show prejudice resulting from the defect alleged to be entitled to judgment as a matter of law that the trustee's deed was voidable. The district court, therefore, correctly denied Appellants' motion for summary judgment on the seventh claim.

## II. Appellants' Valuation Expert

¶33   Appellants contend the district court erred in its Sixth Order excluding Appellants' expert testimony and denying a

---

8. S&S's expert reported the Property's value at $120,000. Cache Title's expert reported the Property's value at $240,000. Both valuations are below the credit bid of $270,823.29, and if accurate, suggest the credit bid resulted in a benefit to Appellants.

motion to supplement the valuation expert's report.[9] We note the following additional relevant facts and then address each argument below.

¶34 In November 2017, Appellants provided their expert witness's report on the value of the Property. The report incorrectly indicated that at the time of the Trustee's sale the Property was zoned for "commercial services" as opposed to the correct zoning as "gateway." Relatedly, the expert incorrectly named industrial use as the highest and best use of the Property. He also used the incorrect zoning designation to find comparable properties in assessing the Property's value. In January 2018, Bank provided its expert's report, which noted the errors in Appellants' expert report. Expert discovery closed in February 2018, and trial was set for that December.

¶35 In August 2018, seven months after the close of expert discovery, in response to a motion to exclude their expert's testimony, Appellants sought leave to supplement their expert's report. In its Sixth Order, the court granted the motion to exclude, and denied Appellants' motion to supplement. In so doing, the court stated,

> On its face, [the expert's] appraisal does not meet the threshold showing of reliability because the incorrect zoning classification affects the highest and best use and comparable property analyses, which both impact valuation. The number given in the report is not supported by the facts. These fundamental errors mean that [the expert's] valuation is based on unreliable and insufficient

9. Appellants do not explicitly challenge the order granting summary judgment in favor of Trustee on Appellants' eighth claim on the basis of the valuation expert's exclusion.

> facts, and thus it is inadmissible. In addition, the errors render the entire opinion unhelpful since it was the valuation that could be used to show chilled bidding on the property, a required element of [Appellants'] claims.

The court further observed that Appellants' action came "approximately eight months after the . . . report challenging the accuracy of facts" asserted by Appellants' expert.

A

¶36 On appeal, Appellants argue that the court abused its discretion by denying their motion to supplement their expert's report. We disagree.

¶37 Under rule 26 of the Utah Rules of Civil Procedure, a party is required, when elected by an opposing party, to provide an expert report "contain[ing] a complete statement of all opinions the expert will offer at trial and the basis and reasons for them." Utah R. Civ. P. 26(a)(4)(B), (C)(i). The rule further provides "[i]f a party fails to disclose or to supplement timely a disclosure or response to discovery, that party may not use the undisclosed witness, document or material at any hearing or trial unless the failure is harmless or the party shows good cause for the failure." *Id.* R. 26(d)(4). Or, "[i]f a party learns that a disclosure or response is incomplete or incorrect in some important way, the party must timely serve on the other parties the additional or correct information if it has not been made known to the other parties. The supplemental disclosure or response must state why the additional or correct information was not previously provided." *Id.* R. 26(d)(5). As long as it applies the correct law, a court has discretion in determining whether disclosure is complete, whether later remedy of non-disclosure or incomplete disclosure is harmless, or whether good cause exists for any related failure. *See Askew v. Hardman*, 918 P.2d 469, 472 (Utah 1996) (recognizing discretion courts are

given in decisions regarding sufficiency of discovery responses, discovery sanctions, and compliance with earlier versions of rule 26); *Bad Ass Coffee Co. of Hawaii Inc. v. Royal Aloha Int'l LLC*, 2020 UT App 122, ¶ 37, 473 P.3d 624 (using abuse of discretion standard to review finding on sufficiency of disclosure); *Gines v. Edwards*, 2017 UT App 47, ¶ 17, 397 P.3d 612 (reviewing, for abuse of discretion, district court's determination that untimely expert disclosure was harmless); *id.* ¶ 29 (observing that appellate courts have "consistently applied the 'harmless' and 'good cause' exceptions when analyzing disclosure errors" (cleaned up)); *accord Sleepy Holdings LLC v. Mountain West Title*, 2016 UT App 62, ¶ 24, 370 P.3d 963 (observing that "the proper inquiry is whether the district court abused its discretion in determining that the plaintiff's failure to disclose was not harmless and that good cause did not excuse its failure" (cleaned up)). And we afford great deference to a court in resolving factual questions underlying those determinations. *See Dahl v. Dahl*, 2015 UT 79, ¶ 63, 459 P.3d 276 ("As a general rule, we grant district courts a great deal of deference in matters of discovery and review discovery orders for abuse of discretion.").

¶38 The district court found that Appellants' motion ran afoul of each of the above standards in rule 26. It first concluded that Appellants' motion to supplement did not merely propose supplementation. This was because Appellants sought to significantly change the underlying data of the expert's report. The court reasoned this was an attempt to submit an "entirely new expert opinion."

¶39 An expert report is intended to "fairly disclose the substance of and basis for each opinion the expert will offer." Utah R. Civ. P. 26 advisory committee notes. A significant change to the basis of an expert's report—one that goes beyond "revis[ing] incorrect information or mak[ing] minor changes, *see Daniels v. Gamma West Brachytherapy, LLC*, 2009 UT 66, ¶ 56, 221 P.3d 256—upends the intent of the disclosure, and may be

viewed as a new report rather than a supplementation. And a report—however titled—founded on a fundamentally different basis is not one which comports with rule 26's instruction to provide a "complete statement of all opinions the expert will offer at trial and the basis and reasons for them." Utah R. Civ. P. 26(a)(4)(B); *see also Daniels*, 2009 UT 66, ¶ 56 (holding no abuse of discretion in striking supplementation to expert's testimony because the expert sought to add new testimony). Here, Appellants sought to change the underlying metric used to determine the Property's valuation—the zoning classification— and the data aggregated to inform the expert's opinion based on that metric—the highest and best use and comparable properties. That "supplementation" was more than a minor correction or change to the expert's opinion of the Property's value, as the district court found. And Appellants have not shown that the district court's finding was clearly erroneous or without support in the record. Therefore, the court's decision to deny the motion to supplement the expert's report was within its discretion.

¶40   Additionally, the court concluded that Appellants failed to timely supplement the disclosure and that this failure was neither harmless nor excused by good cause. As the court noted, the motion to supplement came a full eight months after the errors in the expert's report were pointed out to Appellants, and then only in response to a motion to exclude their expert. Appellants stated that their reason for delay was their reliance on the expert's assurance that the errors were immaterial. But Appellants "had time during expert discovery to add a rebuttal or to 'supplement' timely and correct the error when it was initially pointed out. [But they] chose not to do so." This was not good cause for delay. Experts are expected to know the professional standards of their fields and to provide reliable opinions within those standards. Reluctance to acknowledge a substantial defect as to a known fact in one's own expert opinion does not justify delayed correction when the defect is known,

especially where another expert has pointed out the folly. Any such reliance is not reasonable under these circumstances. Moreover, allowing supplementation at the late stage of ligation would have harmed the other parties who shouldered the expense and effort of preparing their own experts to respond to Appellants' expert report. Accordingly, the district court did not abuse its discretion in finding that Appellants lacked good cause and could not show that granting their motion would be harmless, and therefore, it did not abuse its discretion by denying Appellants' motion to supplement their expert's report.

B

¶41 Appellants also contend that the district court abused its discretion in excluding their expert's testimony on the Property's value. Appellants do not dispute that zoning is an important consideration when valuing property. They do not dispute that the Property's actual zoning classification was more restrictive than that used by their expert. And they do not dispute that the expert erred by using the wrong zoning classification. Rather, Appellants assert that the error does not render the expert's opinion "outside the threshold of reliability." They therefore claim the district court abused its discretion in excluding the expert's opinion. We do not agree.

¶42 Rule 702 of the Utah Rules of Evidence "assigns to trial judges a 'gatekeeper' responsibility to screen out unreliable expert testimony." *Taylor v. University of Utah*, 2020 UT 21, ¶ 16, 466 P.3d 124 (cleaned up). A court therefore should "approach expert testimony with rational skepticism." *Eskelson v. Davis Hosp. & Med. Center*, 2010 UT 59, ¶ 12, 242 P.3d 762 (cleaned up). "The rule provides trial judges the framework to fulfill this assignment." *Taylor*, 2020 UT 21, ¶ 17. As relevant here, the rule requires a "threshold showing that the principles or methods that are underlying in the testimony . . . are based upon sufficient facts or data." Utah R. Evid. 702(b)(2). The data used

must "have a foundation in the evidence, even if the data is in dispute." *California College Inc. v. UCN Inc.*, 2019 UT App 39, ¶ 22, 440 P.3d 825. Accordingly, "the expert cannot give opinion testimony that flies in the face of uncontroverted facts or data." *Id.* (cleaned up).

¶43 In this case, the expert's report relied on a zoning classification of "commercial" rather than the correct zoning classification of "gateway." Based on that error, the expert incorrectly named industrial use as the Property's highest and best use and incorrectly looked to other industrial use properties to determine the Property's value. Resultantly, the data underlying the expert's opinion on the Property's value lacked any foundation indicating reliability and therefore the report was unreliable.[10] The court's decision to exclude the expert's testimony based on that unreliable report did not exceed the limits of reasonability. Therefore, the court did not abuse its discretion by excluding the expert's testimony.

## III. Seventh Order Retaining Summary Judgment Ruling and Amending Rationale

¶44 Appellants contend the district court erred in granting judgment against them in the Seventh Order. Cross-appellants

---

10. Appellants assert that any change in the data or the analysis employed by the expert is immaterial because he comes to the same conclusion in his new opinion. Even if we were to believe the expert's assertion that the valuation remained the same after further analysis using different underlying data, we would still not view the court's determination that the expert's report was unreliable as an abuse of discretion. Reliability is as much about the data and analysis as it is about the conclusion. And our rules of discovery require disclosure of each component of an expert's opinion for that reason, among others.

argue that we lack jurisdiction to consider Appellants' challenge to the Seventh Order and alternatively argue that if the court erred, its ruling may be sustained as to certain claims on the ground that they are time-barred. Cross-appellants also alternatively argue that the court erred in amending the Seventh Order and suggest that summary judgment in their favor can be based on the Settlement Agreement, as the court originally ruled. As a further alternative, Cross-appellants contend that laches bar Appellants' claims. Because we otherwise resolve Cross-appellants' concerns, we do not reach the latter two issues. We first determine we have jurisdiction over this issue. We then address whether Appellants' claim has merit. We conclude that it does as to the first cause of action, and we proceed to address Cross-appellants' argument that the statute of limitations bars that claim.

A

¶45   Cross-appellants assert that we lack jurisdiction over the Seventh Order by pointing out that Appellants filed their first notice of appeal before the Seventh Order was entered and contending that the amended notice of appeal was untimely and unspecific. We hold the amended notice of appeal was both timely and sufficiently specific.

¶46   After amending its previous orders granting summary judgment against Appellants, the district court entered anew a final judgment on August 13, 2019. This was an amended judgment rather than a separate judgment. *See Butler v. Corporation of the President of the Church of Jesus Christ of Latter-day Saints*, 2014 UT 41, ¶ 24 n.6, 337 P.3d 280 ("Once final judgment is entered, all preceding interlocutory rulings that were steps towards final judgment merge into the final judgment and become appealable at that time." (cleaned up)). Appellants filed their amended notice of appeal on September, 11, 2019—one day before Cross-appellants filed their notice of appeal. Because the

appeal was filed within the time allowed under the Utah Rules of Appellate Procedure, it was timely. *See* Utah R. App. P. 4(a). Appellants' notice stated that they appealed "the final judgment in this case, which was entered on August 13, 2019," and specified that the "appeal [wa]s of the entire judgment." A party which has "generally designated the final judgment in his notice of appeal . . . is not precluded from alleging errors in any intermediate order involving the merits or necessarily affecting the judgment as long as such errors were properly preserved" because "the notice of appeal is to be liberally construed" if the opposing party is not prejudiced by the general designation. *See North Fork Special Service Dist. v. Bennion*, 2013 UT App 1, ¶¶ 18, 20, 297 P.3d 624 (cleaned up). Therefore, the notice of appeal was sufficient, and we have jurisdiction to consider the issue raised.

B

¶47 Appellants contend that the district court erred in granting summary judgment independent of the motion against them in its Seventh Order pursuant to rule 56(f) of the Utah Rules of Civil Procedure. In particular, Appellants assert that the court erred in so doing because its basis for dismissing the claims—Appellants' inability to prove damages based on the fair market value of the Property at the time of the Trustee's sale—was not determinative of each claim. We agree as to claim one but disagree as to claims two through seven.

¶48 In response to Appellants' motion to alter or amend its earlier orders, the court ruled in the Seventh Order that "conflicting evidence . . . created a genuine issue of material fact" making summary judgment on the basis of the Settlement Agreement inappropriate. But the court found another reason to grant judgment: the order excluding Appellants' valuation expert. The court reiterated that the expert's appraisal of the Property was unreliable and based on insufficient facts, and thereby it concluded that "there is no genuine issue of material

fact that would preclude summary judgment on the issue of proof of damages." *See supra* Section II. The court, on the basis of rule 56(f)(3) of the Utah Rules of Civil Procedure,[11] granted judgment to Skabelund and S&S on all claims against them.

¶49    As an initial matter, Cross-appellants challenge whether Appellants' arguments regarding the Seventh Order are preserved. In the Seventh Order the court stated that it "hereby provides notice to the parties and a reasonable time to respond, 30 days, before it will enter judgement on these grounds." *See* Utah R. Civ. P. 56(f). Appellants did not thereafter file anything with the court to oppose the proposed ruling.[12] Cross-appellants

---

11. We clarify here that under the procedural posture of the case, the court's ruling is based on rule 56(f)(3) rather than rule 56(f)(2), that is referenced in the court's order. Subsections (1) and (2) of rule 56(f) permit a court to grant summary judgment to a party after a motion is filed, regardless of whether that party filed the motion or whether the ground for the judgment was raised in the motion. *See* Utah R. Civ. P. 56(f). By contrast, subsection (3) empowers a court to "consider summary judgment on its own," even in the absence of a motion. *Id.* Here, the court had already adjudicated the motion for summary judgment and was considering only the motion to alter or amend its judgment. Because no motion for summary judgment was before the court at the time of its ruling on the motion to alter or amend, the court's order granting summary judgment on an alternative basis was pursuant to rule 56(f)(3).

12. Appellants assert the cause for their unresponsiveness was confusion regarding the implications of the court's order. The court's Seventh Order granted the parties notice and time to respond but also indicated it was entering the judgment and that the "order constitute[d] the final order of the court" on the matter. Appellants thereafter sought clarification from the

(continued…)

assert that the absence of a response means that Appellants' issue is not preserved for appeal.

¶50 Utah courts have consistently held that "an issue is preserved for appeal when it has been presented to the district court in such a way that the court has an opportunity to rule on it." *E.g.*, *State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443 (cleaned up). Here, the district court acted of its own initiative to grant judgment independent of a motion. The rule 56(f) undertaking not only presented the court with an opportunity to consider whether its judgment was sustainable on grounds not raised in Cross-appellants' motion for summary judgment, but necessarily compelled the court to consider that issue. Therefore, the issue was preserved for appeal by nature of the court's rule 56(f) ruling. Appellants' failure to respond within a reasonable time

---

(…continued)

court—albeit well past the time allotted for a response—and were informed the court had sufficient evidence to make its decision.

We take this opportunity to clarify the procedure for obtaining a rule 56(f) judgment. Whether a motion is filed, or whether the court considers summary judgment of its own accord, the court must present the parties with notice of its anticipated judgment and a reasonable time to respond before entering the judgment. The notice need not be in the form of a proposed order but must fairly apprise the parties of (1) the particular claims on which the court anticipates granting summary judgment and (2) the ground(s) to be relied on by the court in granting judgment, including, if applicable, any material facts the court may consider not to be genuinely in dispute. If after receiving the parties' responses, the court determines summary judgment is appropriate, the court may then enter the judgment in keeping with the notice provided to the parties.

after receiving notice, while unadvisable, does not divest the issue of its preserved status. Therefore, we consider it.

¶51    We begin by recognizing that a court may enter summary judgment independent of a motion against a party to which the burden of production falls if the court determines, after the party is given notice and reasonable time to respond, *see* Utah R. Civ. P. 56(f), [13] that the opposing party (or parties) is entitled to judgment as a matter of law and no material fact remains in

---

13. Although the 2015 amendment to rule 56 of the Utah Rules of Civil Procedure was designed to "adopt the style of Federal Rule of Civil Procedure 56 without changing the substantive Utah law," Utah R. Civ. P. 56 advisory committee notes, it added rule 56(f), governing judgments independent of the motion—a procedure not previously articulated in our rules. That procedure was added to the federal rules in 2010 to "bring[] into Rule 56 text a number of related procedures that have grown up in practice." Fed. R. Civ. P. 56(f) (2010 advisory committee notes). The incorporation of rule 56(f) similarly reflects some procedures that appear in Utah practice but conflict with others. *Compare* Utah R. Civ. P. 56(f) (permitting a court to grant summary judgment independent of the motion under subsections (1) and (2) and to grant judgment independent of any motion under subsection (3)), *with Kell v. State*, 2008 UT 62, ¶ 46, 194 P.3d 913 ("It is error for a trial court to sua sponte grant summary judgment on an issue when neither party has sought summary judgment on that issue."). The implication is that the adoption of the rule supersedes—whether intentionally or not— our case law to the contrary. Thus, rule 56(f) abrogates *Kell v. State*, inasmuch as that opinion indicates a court may not sua sponte grant summary judgment on an issue in the absence of a motion. But a court must still provide notice and an opportunity to respond before doing so. *See* Utah R. Civ. P. 56(f).

dispute, *cf. Salo v. Tyler*, 2018 UT 7, ¶ 26, 417 P.3d 581. But, if a party shows either that judgment cannot be determined as a matter of law or that a genuine issue of material fact precludes summary judgment on the independent basis the court has identified, then summary judgment remains unavailable. *See* Utah R. Civ. P. 56(a), (f).

¶52 The court's Seventh Order dismissed claims one through seven against S&S and Skabelund. To determine whether the court correctly entered judgment independent of the motion on each claim, we first must identify whether each claim requires a showing of damages. Next, we must determine whether the exclusion of Appellants' valuation expert forecloses Appellants' ability to prove damages as a matter of law on each claim.

1.    First Claim

¶53 Appellants' first claim for legal malpractice against Skabelund alleged he breached applicable standards of professional conduct when he entered into and enforced the terms of the trust deed. The complaint's language frames the claim as one arising from fiduciary duties.[14] The elements required to prove legal malpractice based on fiduciary duty includes damages.[15] *See Christensen & Jensen, PC v. Barrett & Daines*, 2008 UT 64, ¶ 22, 194 P.3d 931. On this claim,

---

14. Legal malpractice claims may derive from tort law, fiduciary duty, or contract. *See Christensen & Jensen, PC v. Barrett & Daines*, 2008 UT 64, ¶ 21, 194 P.3d 931.

15. "The elements required for a legal malpractice claim based on a breach of fiduciary duty [are]: (1) an attorney-client relationship; (2) breach of the attorney's fiduciary duty to the client; (3) causation, both actual and proximate; and (4) damages suffered by the client." *Christensen & Jensen*, 2008 UT 64, ¶ 23 (cleaned up).

Appellants asserted they were damaged when Skabelund "enforced the note . . . by foreclosing the trust deed and directing the sale of the [Property] . . . to satisfy it." Appellants sought the difference between the interest and charges prescribed under the note and "reasonable interest and charges." The damages sought on this claim were not tied to the Property's value, but to the different interest rates and charges. Thus, the exclusion of the valuation expert's testimony did not prevent Appellants from proving damages as a matter of law.

¶54    Cross-appellants assert that Appellants failed to offer any evidence of what "reasonable terms for interest and charges" would be, and therefore they still lack the necessary evidence to prove their claim. That assertion is the single reference to a lack of evidentiary support to establish damages for this cause of action in the voluminous briefings on appeal. Cross-appellants do not cite the record to support their assertion, and they do not explain and demonstrate how Appellants might be foreclosed from proving these damages (e.g., by arguing that an expert must establish such damages, and that such expert was never disclosed) beyond the general assertion. Appellants are silent on the issue. We therefore conclude that support for this assertion is not apparent on the record, and we decline to address it. *See Cochegrus v. Herriman City*, 2020 UT 14, ¶ 36, 462 P.3d 357 ("For a legal theory to be apparent on the record, the record must contain sufficient and uncontroverted evidence supporting the ground or theory to place a person of ordinary intelligence on notice that the prevailing party may rely thereon on appeal." (cleaned up)).

¶55    Because the first claim asserts damages that do not depend on the Property's value, the district court incorrectly concluded that the exclusion of Appellants' valuation expert foreclosed, as a matter of law, Appellants' ability to demonstrate damages on this claim.

2.      Second Through Sixth Claims

¶56     Appellants' second claim alleges legal malpractice against Skabelund, related to his formation and management of Pdnulebaks. The third claim asserts Skabelund committed fraud in connection with the formation of Pdnulebaks. The fourth claim was against S&S for breach of the Settlement Agreement and asserted S&S failed to wait as agreed to accomplish a trustee's sale. The fifth claim asserted fraud in the Trustee's sale against Skabelund and S&S because it was not postponed as stipulated in the Settlement Agreement. The sixth claim was for breach of fiduciary duty against Skabelund for his management of Pdnulebaks while conflicted as the manager of S&S. Each claim required Appellants to prove damages.[16] And Appellants framed those claimed damages in terms of the Property's value.

---

16. The elements to be shown for the second malpractice claim are the same as those in the first claim. *See supra* note 15. As to claims three and five,

> A claim of fraud requires the plaintiff to allege (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either knew to be false or made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was induced to act (9) to that party's injury and damage.

*Robinson v. Robinson*, 2016 UT App 33, ¶ 21, 368 P.3d 105. On the fourth claim, "the elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking

(continued…)

¶57 On the second claim, Appellants asserted as the single source of damages Skabelund's management of Pdnulebaks "for his own benefit including by failing to take reasonable steps to preserve Pdnulebaks' equity in the [Property] and allowing it to be sold" under value at the Trustee's sale. Accordingly, Appellants' demanded the difference between the Property's sale price and its "fair market value." On their third claim, Appellants asserted that they were damaged by the fraud because it "resulted in the loss of the [Property] at the Trustee's sale to S&S for substantially below market value." Appellants again conditioned their claim on damages deriving from the sale. As damages for the fourth claim, Appellants asserted that the Property was sold without the exercise of Appellants' rights, resulting in "the difference between [the sale price] and the fair market value of the [Property]," and they asked for relief in that amount. Similarly, Appellants' fifth claim complained that the sale was accomplished by fraud and resulted in harm because the Property was "sold at the trustee's sale for substantially less than market value." Appellants again claimed damages for the difference between the sale price and "the fair market" value. For the sixth cause of action, Appellants claimed they were damaged by "Skabelund's breach of fiduciary duties including, without limitation, the difference between the successful credit bid of S&S at the trustee's sale and the fair market value of the [Property]." But Appellants limit themselves to the Property's

---

(…continued)

recovery, (3) breach of the contract by the other party, and (4) damages." *America West Bank Members v. State*, 2014 UT 49, ¶ 15, 342 P.3d 224 (cleaned up). Regarding the sixth claim, "[b]reach of fiduciary duty claims generally require proof of four elements: the existence of a fiduciary relationship . . . ; breach of the fiduciary duty; causation, both actual and proximate; and damages." *Gables at Sterling Village Homeowners Ass'n, Inc. v. Castlewood-Sterling Village I, LLC*, 2018 UT 04, ¶ 52, 417 P.3d 95.

value as the basis for their claim of damages and again seek the difference between the Property's sale price and its "fair market value." Appellants point us to no place in the record asserting any other basis for their claims of damages, nor do they present such a basis on appeal.

¶58    Accordingly, Appellants' damages theory for each claim depends on the assertion that the Property was sold for less than its value at the Trustee's sale because "[a] party is bound by the terms of his own pleading." *See Larsen v. Davis County School Dist.*, 2017 UT App 221, ¶ 39, 409 P.3d 114. To prove their claims, Appellants had to provide evidence that the Property's value exceeded its sale price. The exclusion of Appellants' valuation expert deprived Appellants of evidence to that end—the remaining valuations being less than the sale price. *See supra* note 8.

¶59    Because Appellants could not provide evidence of the Property's value in excess of its sale price after the exclusion of their valuation expert, the court correctly entered judgment against them on claims two through six.

3.    Seventh Claim

¶60    Appellants' seventh claim was to set aside the Trustee's sale. Appellants correctly argue that this equitable claim does not necessarily require a showing of the type of damages with which we are concerned here.[17] But when a claimant's argument

---

17. "To set aside a trustee's deed, a court must determine whether the trustee's deed was void as against public policy, or voidable because of fraud, unfair dealing, or that the trustor suffered prejudice due to some defect in the sale, such as the trustee's failure to strictly comply with the Trust Deed Act." *Bank of Am. v. Adamson*, 2017 UT 2, ¶ 33, 391 P.3d 196.

to set aside a trustee's sale requires a showing of prejudice arising from a notice defect in the sale, proof of damages is essential. *See Concepts, Inc. v. First Sec. Realty Services, Inc.*, 743 P.2d 1158, 1159 (Utah 1987) (per curiam) ("Defects in the notice of foreclosure sale that will authorize the setting aside of the sale must be those that would have the effect of chilling the bidding and causing an inadequacy of price."); *see also Bank of Am. v. Adamson*, 2017 UT 2, ¶ 26, 391 P.3d 196.

¶61     Appellants' cause of action to set aside the Trustee's sale requires a showing of prejudice as we explain above. Although Appellants' pleadings included allegations of fraud in the Trustee's sale, those claims fail, *supra* ¶¶ 56–59, and cannot support their seventh claim. Likewise, we have rejected Appellants' contention that the trustee's deed was void. *See supra* note 4. Accordingly, Appellants' remaining avenue of argument is that the Trustee's sale resulted in prejudice, and they were required to show damages in the form of chilled bidding and an inadequate purchase price. But the exclusion of their valuation expert leaves them without evidence on whether an inadequate purchase price was obtained.[18] Consequently, the district court correctly granted judgment against Appellants on their seventh claim.

_____

18. This argument further fails in light of our other holdings. *See supra* note 5 (rejecting, as unpreserved, argument that Trustee's breach of the trust deed's notice provision made the trustee's deed voidable); *supra* Section I.A (rejecting argument that Appellants demonstrated prejudice in challenge to Third Order denying summary judgment to Appellants on seventh claim); *supra* Section I.B (rejecting argument that prejudice should be presumed in challenge to Third Order denying summary judgment to Appellants on seventh claim).

C

¶62 Having determined that the district court erred in granting judgment against Appellants on their first claim alleging malpractice by Skabelund for the trust deed, we proceed to address Cross-appellants' argument that the remaining claim is time-barred. Specifically, Cross-appellants argue, as an alternative to upholding the district court's summary judgment ruling, that the court erred in rejecting the statute of limitations defense presented in their motion to dismiss, in their opposition to Appellants' third amended complaint and in their motion for summary judgment. We agree.

¶63 "A plaintiff must file a complaint before the statute of limitations expires or its claim will be barred." *Young Res. Ltd. P'ship v. Promontory Landfill LLC*, 2018 UT App 99, ¶ 10, 427 P.3d 457; *see* Utah Code Ann. § 78B-2-102 (LexisNexis 2017) ("Civil actions may be commenced only within the periods prescribed in this chapter . . . ."). "Under Utah law, a malpractice action must be brought within a four-year limitation period." *Moshier v. Fisher*, 2019 UT 46, ¶ 8, 449 P.3d 145 (citing Utah Code section 78B-2-307(3)). Our supreme court has indicated that for a malpractice claim, the limitation period begins to run when a party suffers actual harm or damages—i.e., "the last event necessary to complete the cause of action." *See id.* (cleaned up); *see also* Utah Code Ann. § 78B-2-102 ("Civil actions may be commenced only . . . after the cause of action has accrued . . . ."); *see generally supra* note 15 (describing elements of malpractice claim). But "full comprehension of damages stemming from injurious conduct is not required before the clock starts running on the limitations period." *Stephenson v. Elison*, 2017 UT App 149, ¶ 46, 405 P.3d 733. In other words, "a cause of action accrues when a plaintiff could have first filed and prosecuted an action to successful completion." *DOIT, Inc. v. Touche, Ross & Co.*, 926 P.2d 835, 843 (Utah 1996).

¶64    Here, Cross-appellants argue that the claim accrued when the note and deed were executed or, alternatively at the time the note was due, at the time a default was declared, or at the recording of the foreclosure. Contrastingly, Appellants contend they "did not incur actual losses until Skabelund enforced the note and conducted the foreclosure sale" and insist that the malpractice action has yet to accrue because this litigation remains unresolved.

¶65    Appellants cite *Tuttle v. Olds*, 2007 UT App 10, 155 P.3d 893, to support their proposition. In *Tuttle*, the court adjudicated a statute of limitations issue on a claim regarding water rights. *Id.* ¶ 11. The plaintiffs in that case had received notice about their lack of certain water rights but sold their property relying on earlier assurances that they possessed those rights. *Id.* ¶¶ 3–4. The buyers sued plaintiffs and prevailed. *Id.* ¶ 4. The plaintiffs later sued the state to recover damages for providing them misleading information regarding their water rights. *Id.* ¶ 5. The state moved to dismiss the case as barred by the statute of limitations, arguing that the plaintiffs' cause of action accrued when they received notice of the lack of water rights. *Id.* ¶¶ 5, 11–12. The court granted the motion but was reversed on appeal. *Id.* ¶¶ 5, 17. This court explained that "the law does not recognize an inchoate wrong, and therefore, until there is actual loss or damage resulting to the interests of another, a claim for negligence is not actionable." *Id.* ¶ 11 (cleaned up). Accordingly, this court concluded it was after the judgment was entered for the buyers that plaintiffs suffered an actual loss, and only then did their cause of action accrue. *Id.* ¶ 12.

¶66    *Tuttle* is distinguishable from this case because there is no underlying litigation that must resolve before damages accrue to Appellants. Rather, Appellants were damaged, as they acknowledge, when Skabelund *enforced* the trust deed. But Skabelund enforced the trust deed well before the Trustee's sale; the sale was a continuation of the enforcement effort. He first

enforced the trust deed between October 21, 2010—the maturity date on the note and deed—and May 24, 2011—the date Skabelund declared the note and deed in default and caused Cache Title to record the same. His enforcement of the note sought payment, including the "unreasonable interest and charges." Therefore, it was at that time Appellants suffered actual harm or damages from the alleged malpractice. And although the amount of damages continued to increase through the conclusion of the sale, that increase is immaterial to when the initial harm—completing the cause of action—was done.

¶67 The trust deed's enforcement presented more than an inchoate harm—the mere possibility, or probability, of loss. Loss (the imposition of the note's interests and charges) became certain when Skabelund enforced the deed. That is discernable because even if Phillips had paid the balance on the note at the time it was due—avoiding the foreclosure—he would still have a prima facie claim for malpractice against Skabelund under the alleged facts because he would still have suffered the harm of paying "unreasonable interest and charges" under the note. What's more, Phillips was aware that his claims had accrued, as manifest by his bankruptcy filling in November 2011 indicating that he had unliquidated claims against Skabelund for malpractice.

¶68 Under these facts, the latest date for the accrual of Appellants' claim for malpractice on the trust deed and note against Skabelund was May 24, 2011. Appellants did not file their complaint until December 20, 2015. This is beyond the four-year limitation period. Accordingly, Appellants' first claim for malpractice was time-barred and the district court incorrectly denied Cross-appellants' motions.

### IV. Attorney Fees on Appeal

¶69 Finally, Cross-appellants ask us to award them their attorney fees incurred on appeal. It is well-settled that "when a

party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal." *Tronson v. Eagar*, 2019 UT App 212, ¶ 39, 457 P.3d 407 (cleaned up). Having received attorney fees in the underlying action and under the conclusions reached in this opinion, Cross-appellants are entitled to recover reasonable attorney fees incurred on appeal.[19]

CONCLUSION

¶70   We affirm the district court's dismissal of Appellants' claim under the Utah Trust Deed Act's notice-of-postponement provision because Appellants do not challenge an independent basis for dismissal as articulated by the district court. We do not address Appellants' argument that the trustee's deed is voidable even absent a showing of prejudice where Trustee breached the notice provision of the trust deed because that claim is unpreserved and Appellants make no argument for our consideration of the unpreserved claim. We reject Appellants' challenge to the denial of their motion for summary judgment on the seventh claim asserting that prejudice should be presumed or that prejudice was sufficiently demonstrated. We also reject Appellants' argument that the district court abused its discretion in denying their motion to supplement their expert's report and in ordering that expert's testimony excluded. We uphold as correct the district court's ruling granting judgment to S&S and Skabelund on claims two through six based on Appellants' inability to prove damages following the exclusion of their valuation expert. We uphold the district court's grant of judgment to S&S and Skabelund as to claim one on the

---

19 . Appellants similarly request attorney fees on appeal. However, because they are not prevailing parties, we deny their request.

alternative ground that the claim is time-barred. Finally, we grant Cross-appellants' request for attorney fees on appeal and remand to the district court for the purpose of quantifying those fees.

¶71 Affirmed. Costs to Appellees and Cross-appellants. *See* Utah R. App. P. 34(a).

———————