2024 UT App 90

## THE UTAH COURT OF APPEALS

RANDIE HALLETT,
Appellant,
*v.*
JOHN TULLY,
Appellee.

Opinion
No. 20230364-CA
Filed June 21, 2024

Fifth District Court, St. George Department
The Honorable Gary D. Stott
No. 160500601

Kevin K. Robson and Jennifer R. Johnson,
Attorneys for Appellant

Christian W. Nelson, Brandon B. Hobbs, and
Aaron T. Cunningham, Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES RYAN M. HARRIS and RYAN D. TENNEY concurred.

ORME, Judge:

¶1 After Randie Hallett presented her case-in-chief against John Tully in this medical negligence matter, the trial court granted Tully's motion for judgment as a matter of law. In this appeal, Hallett asks this court to reverse several decisions of the trial court. In addition to the grant of judgment as a matter of law, Hallett also challenges the trial court's rulings excluding the testimony of Hallett's causation expert and limiting the testimony of a fact witness. As to the expert, the trial court concluded that Hallett did not make a threshold showing of reliability regarding the expert's opinions on whether her neurological recovery was adversely affected by a delay in the diagnosis and treatment of Hallett's medical condition. Because any concerns with the

expert's causation opinion relate to its weight, not its reliability, we reverse and remand the matter for a new trial. But we affirm the limitations placed on the testimony of the fact witness insofar as she was attempting to offer inadmissible opinion testimony.

BACKGROUND

¶2    On November 25, 2015, Hallett fell ill while on a trip with friends. She was transported by ambulance to the emergency department at Dixie Regional Medical Center, arriving at approximately 8:00 a.m. The EMS note described Hallett's symptoms as dizziness, fainting, slurred speech, confusion, and numbness of the lip and left hand. The triage notes prepared by the nurse who assessed Hallett when she arrived at the hospital mentioned left-sided weakness and numbness, a fainting episode with nausea, and an altered level of consciousness.

¶3    While in the emergency room, Hallett was seen by Tully, a physician assistant working at the hospital on a contract basis rather than as an employee of the hospital. Tully ordered a non-contrast CT scan for Hallett at approximately 8:30 a.m. After reviewing the CT scan and speaking with Hallett, Tully diagnosed her with vertigo, gave her the drug Ativan, and discharged her at 11:24 a.m. The friends with whom she was traveling picked Hallett up from the hospital.

¶4    When Hallett's condition worsened later that day, her friends drove her back to the hospital. During her second hospitalization, a CT angiogram revealed a blood clot in Hallett's basilar artery and an MRI showed that she had suffered a stroke. At approximately 2:30 a.m. on November 26th, a neurosurgeon at the hospital performed a thrombectomy and removed the clot from Hallett's brain. Hallett alleges that she suffered neurological injuries as a result of the delay in performing that procedure.

¶5      Hallett thereafter brought a medical negligence action against Tully and other individuals involved in her care at the hospital. Only the claims against Tully are at issue in this appeal.[1]

¶6      Intending to rely on expert testimony at trial, Hallett submitted a disclosure pursuant to rule 26(a)(4)(A) of the Utah Rules of Civil Procedure, identifying Dr. Arthur Kowell as a retained expert witness. According to the disclosure, Hallett anticipated that Dr. Kowell, a board-certified neurologist and a clinical professor in neurology at UCLA, would testify on issues of causation and damages, including the "damages that were caused by the delay in the diagnosis of Ms. Hallett's stroke." Relevant to this appeal, it was expected that Dr. Kowell's testimony would include his opinion on "the damages caused by the defendants' negligence, including how [Hallett's] condition would have been different had the defendants complied with the applicable standard of care and diagnosed her stroke in a timely manner."

¶7      Tully deposed Dr. Kowell in January 2020. When Dr. Kowell was asked if he was able to separate the damages caused by Hallett's stroke from the damages related to the alleged delay in diagnosis, he replied, "[I]f she had had earlier treatment, I think it's more likely than not, way more likely than not, way more likely than 50 percent, that she would have little or no residual neurologic deficits or problems." According to Dr. Kowell, recent literature "confirms" that the benefits of a thrombectomy are "significant" and "had the thrombectomy been performed a lot earlier in the course of the stroke development, . . . it's medically probable she would have little or no deficit neurologically at the present time." Dr. Kowell was then asked for his opinion on when the thrombectomy should have been performed. He answered, "I

---

1. Hallett's claims against all other defendants were dismissed on the parties' motions either before or during the trial.

would say three to four hours . . . after she [first] got to the emergency room."

¶8    Dr. Kowell was questioned about the basis for his opinion that the delay in performing the thrombectomy caused Hallett's neurologic injuries. He replied that his opinion was "[b]ased on experience and the literature" but clarified that he was not relying on "specific literature" and would not be pointing to any at trial. As to the conclusions he drew from the literature, Dr. Kowell testified, "There is a lot of literature about thrombectomies, certainly in the last few years. But the fact that thrombectomy can be considered as long as 24 hours after an event and get good results, when you look at these studies, the ones of the patients who get earlier intervention do better. A lot better." According to Dr. Kowell, he had reviewed "plenty of literature" over the years that supported this opinion.

¶9    Tully also deposed Hallett's friend (Friend) who was with her when she suffered the stroke and accompanied her to the hospital. Friend is a chiropractor, but Hallett designated her as a fact witness. It was anticipated that Friend would "testify as to her personal knowledge of matters relating to [the] case and as to the losses . . . Hallett has suffered as a result of [the] incident." During her deposition, however, Friend offered opinions on the care Hallett received during her initial hospital admission. Specifically, she testified that she did not agree with Tully that Hallett was suffering from vertigo, she told Tully she believed Hallett "was having a vasovagal response based on her symptoms," and she disagreed with Tully's decision to give Hallett the drug Ativan.

¶10    Prior to the March 2023 trial, Tully filed several motions in limine, only two of which are relevant to the issues raised by Hallett in this appeal. In the first, Tully asked the trial court to exclude Dr. Kowell's causation opinions. Specifically, Tully challenged Dr. Kowell's opinion testimony on reliability grounds, arguing that Dr. Kowell had not reliably applied scientific

knowledge to the facts of the case. According to Tully, Dr. Kowell's testimony that Hallett's neurological outcome would have been better if the thrombectomy had been performed within three to four hours after she first arrived at the hospital was "without scientific basis." In the second motion, Tully sought limitations on Friend's trial testimony, arguing that Friend did not qualify as an expert witness and, thus, should not be permitted to offer any opinions concerning the medical care Hallett received.

¶11   The trial court granted both motions. The court ruled that Dr. Kowell was "precluded from offering opinions bearing on liability, causation, and damages at trial." The court's order is silent as to the basis for this ruling. Friend was "limited to fact witness testimony at trial" and was "precluded from rendering opinions that she disagreed with diagnoses, that [Hallett] was not experiencing vertigo, that she disagreed with the interpretation of the CT scan, the diagnosis of stroke, or any other expert opinions." Friend was also "precluded from testifying regarding any discussion she had with any health care provider about conclusions she drew or disagreements with their decisions, analysis, or treatment based upon her training, experience, education, or observations."

¶12   The matter proceeded to trial. Neither Dr. Kowell nor Friend testified. At the close of Hallett's case, Tully moved for judgment as a matter of law, arguing Hallett did not present sufficient evidence from which a reasonable jury could conclude that Tully's alleged negligence was the actual and proximate cause of her damages. The trial court granted the motion and entered a final order dismissing the claims against Tully. Hallett appeals.

ISSUES AND STANDARDS OF REVIEW

¶13   Hallett raises three issues on appeal. She first asks this court to reverse the grant of judgment as a matter of law in Tully's

favor, arguing that the evidence presented at trial was sufficient to establish the causation element of her medical negligence claim. "Appellate courts review the grant or denial of a motion for judgment as a matter of law for correctness." *Pinney v. Carrera*, 2019 UT App 12, ¶ 11, 438 P.3d 902 (quotation simplified), *aff'd*, 2020 UT 43, 469 P.3d 970. "A trial court is justified in granting [judgment as a matter of law] only if, examining all evidence in a light most favorable to the non-moving party, there is no competent evidence that would support a verdict in the non-moving party's favor." *Gables at Sterling Village Homeowners Ass'n v. Castlewood-Sterling Village I, LLC*, 2018 UT 4, ¶ 21, 417 P.3d 95 (quotation simplified).

¶14 Hallett also challenges the grant of Tully's motions in limine that resulted in the exclusion of Dr. Kowell's expert testimony and limitations on Friend's testimony. "A trial court's exclusion of expert testimony is reviewed for an abuse of discretion and is reversed if it exceeds the limits of reasonability." *State v. Clopten*, 2009 UT 84, ¶ 6, 223 P.3d 1103 (quotation simplified). We also "review decisions relating to the qualification of a witness as an expert or as a lay witness for an abuse of discretion." *State v. Rothlisberger*, 2004 UT App 226, ¶ 9, 95 P.3d 1193, *aff'd*, 2006 UT 49, 147 P.3d 1176.

ANALYSIS

¶15 We turn first to Hallett's argument that Dr. Kowell's expert testimony was wrongfully excluded because our resolution of the argument is dispositive of this appeal. Hallett argues that Tully's challenges to Dr. Kowell's causation opinion are an attack on the weight of that evidence rather than its admissibility. We agree.

¶16 The Utah Rules of Evidence permit opinion testimony from "a witness who is qualified as an expert by knowledge, skill, experience, training, or education" so long as such testimony will "help the trier of fact to understand the evidence or to determine

a fact in issue." Utah R. Evid. 702(a). In his motion in limine, Tully did not dispute that Dr. Kowell possesses the required knowledge, skill, experience, training, or education to form an opinion as to causation.[2] Nor did Tully argue that Dr. Kowell's causation testimony would not assist the trier of fact. We thus focus our review on rule 702(b), which states that a qualified expert may give opinion testimony "only if there is a threshold showing that the principles or methods that are underlying in the testimony (1) are reliable, (2) are based upon sufficient facts or data, and (3) have been reliably applied to the facts." *Id*. R. 702(b).

¶17    It is well settled that rule 702(b) "require[s] the plaintiff to make only a threshold showing of reliability." *Eskelson ex rel. Eskelson v. Davis Hosp. & Med. Center*, 2010 UT 59, ¶ 12, 242 P.3d 762 (quotation simplified). "This threshold is not so rigorous as to be satisfied only by methodology or data that are free of controversy." *California College Inc. v. UCN Inc.*, 2019 UT App 39, ¶ 22, 440 P.3d 825 (quotation simplified). Thus, even if data or studies are debatable, a qualified medical expert may rely on his or her interpretation of that information to arrive at an opinion. *See id*. The expert, however, "cannot give opinion testimony that flies in the face of uncontroverted facts or data." *Id*. (quotation simplified).

¶18    Here, Tully argued in his motion in limine that the studies on which Dr. Kowell based his causation opinion do not support his conclusions. Specifically, Tully represented to the trial court that the "scientific data upon which" Dr. Kowell relied "does not

---

2. Tully did, however, argue that Dr. Kowell did not possess the requisite knowledge, skill, experience, training, or education to offer opinions regarding Hallett's psychological and emotional injuries. The trial court's order does not expressly discuss this or any other argument made by Tully in his motion. Even assuming the trial court's ruling prohibited Dr. Kowell from testifying as to Hallett's psychological and emotional injuries, Hallett does not challenge that implied ruling on appeal, so we do not reach it.

differentiate outcomes with treatment at three to four hours versus at 24 hours after onset of symptoms." But Tully does not point to any record evidence supporting this statement, and the trial court's order contains no factual finding on this point.

¶19    Even if Tully could support the representations made, i.e., that Dr. Kowell relied on studies that do not specifically distinguish outcomes among stroke patients who receive a thrombectomy at any time within a twenty-four-hour period, that would not result in the exclusion of Dr. Kowell's causation testimony. Dr. Kowell, a board-certified neurologist with more than forty years' experience, testified that patients who receive thrombectomies within twenty-four hours have "good results" but "patients who get earlier intervention do . . . [a] lot better." This opinion was based on his experience as a neurologist and his interpretation of "plenty of literature." Thus, Hallett satisfied her initial burden of making a threshold showing of reliability. *See Eskelson*, 2010 UT 59, ¶ 12. In a situation like that presented here, unless Tully can point to uncontroverted data showing that patients who receive thrombectomies at any time within a twenty-four-hour period have identical outcomes, he cannot successfully challenge the admissibility of Dr. Kowell's causation opinion on reliability grounds. *See California College*, 2019 UT App 39, ¶ 22 (stating that unreliable testimony is that which "flies in the face of uncontroverted facts or data") (quotation simplified).

¶20    Dr. Kowell's opinion testimony on causation was wrongly excluded because Hallett made a threshold showing that the testimony is reliable, and Tully has not demonstrated that the facts or data on which Dr. Kowell relied are irrelevant or demonstrably incorrect.[3] Tully's arguments, correctly viewed, are

---

3. When exercising their gatekeeping responsibilities under rule 702(b), trial courts should be wary of challenges to the reliability of opinions offered by medical professionals who are qualified to give expert testimony. The purpose of rule 702(b) is to weed out

(continued…)

directed at the weight of Dr. Kowell's testimony, not its admissibility. Tully can use the studies he alludes to in his motion in limine to challenge the conclusions Dr. Kowell drew from his experience and the literature, but that challenge must be made at trial via cross-examination.

¶21 Because the trial court exceeded the sound exercise of its discretion in excluding Dr. Kowell's testimony, Hallett is entitled to a new trial. The entire basis for the court's grant of judgment as a matter of law to Tully was that, in the court's view, Hallett did not present sufficient evidence from which a reasonable jury could conclude that Tully's alleged negligence was the actual and proximate cause of her damages. But with Dr. Kowell's testimony in evidence, Hallett would have sufficient support for her assertion that Tully's negligence caused her to sustain damages. We, therefore, not only reverse the grant of Tully's motion in limine as to Dr. Kowell's causation opinion but also reverse the grant of judgment as a matter of law in Tully's favor. Accordingly, it is unnecessary to address Hallett's fallback argument that the evidence she presented at trial was sufficient to prove the causation element of her medical negligence claim even without Dr. Kowell's testimony.

¶22 Because Hallett is entitled to a new trial, we also consider whether the trial court abused its discretion in limiting Friend's testimony as that question may arise again. *See State v. Ogden*, 2018 UT 8, ¶ 49, 416 P.3d 1132 ("Although it is unnecessary to our

---

expert opinions grounded in facts or data categorically proved to be incorrect—not medical opinions that are reasonably debatable. *See* Utah R. Evid. 702 advisory committee note (stating that rule 702(b) "is broad enough to permit testimony that is the product of competing principles or methods in the same field of expertise"). "Rule 702's threshold showing requires only a basic foundational showing of indicia of reliability for the testimony to be admissible, not that the opinion is indisputably correct." *State v. Woodard*, 2014 UT App 162, ¶ 23, 330 P.3d 1283 (quotation simplified).

decision, we retain the authority to reach issues when we believe our analysis could prove helpful on remand."). Friend was disclosed as a fact witness, not an expert witness. Yet during her deposition, Friend offered opinions regarding Hallett's initial diagnosis and the care Hallett received during her initial hospitalization. Friend also testified that she expressed these opinions to Tully. When the trial court granted Tully's motion in limine as to Friend's testimony, it precluded Friend from testifying about "any discussion she had with any health care provider about conclusions she drew or disagreements with their decisions, analysis, or treatment based upon her training, experience, education, or observations."

¶23   Although Hallett interprets the trial court's limitations on Friend's testimony as prohibiting Friend from testifying about her "personal knowledge of [Hallett's] symptoms based on her observations," Friend's testimony was not so limited. Friend was free to testify about her observations; the limitations imposed by the trial court only prohibited her from testifying about any opinions or conclusions she drew from those observations and any conversations she had with Hallett's care team during which she expressed such opinions or conclusions. But Hallett also argues that the trial court abused its discretion in so limiting Friend's testimony.

¶24   In her principal brief, Hallett contends that Friend "would simply be providing testimony about her observations as a percipient eyewitness to [Hallett's] stroke symptoms and the treatment or lack thereof, that [Hallett] received at [the hospital] and of conversations that [Friend] had at that time." But in her memorandum opposing Tully's motion in limine, Hallett asserted Friend should be permitted to testify regarding statements she made to Tully that were based on Friend's "personal knowledge of vertigo symptoms having herself treated patients for that medical condition in her chiropractic practice." It is noteworthy, however, that Hallett expressly concedes in her principal brief that Friend is not qualified to offer expert opinions on the

standard of care for stroke patients. And a review of Friend's deposition testimony shows that the conversations between Friend and Tully involved that very topic.

¶25 By arguing that Friend should be permitted to testify about conversations she had with Tully concerning Hallett's diagnosis and treatment, Hallett is attempting to use those conversations as a backdoor means of introducing opinion testimony that does not meet the requirements of rule 702. Because Friend is not a qualified expert, her opinion on the standard of care for stroke patients is inadmissible under rule 702. Accordingly, the trial court did not abuse its discretion in prohibiting Friend from testifying about her opinions on Hallett's diagnosis or treatment, either through direct testimony or by recounting conversations she had with Tully during which Friend expressed her disagreements or opinions.[4]

---

4. Attempting to avoid this result, Hallett argues that Friend's opinion testimony is permissible under rule 701 of the Utah Rules of Evidence. Hallett did not rely on rule 701 before the trial court, but we briefly address her appellate argument because it is clear Friend's testimony does not comply with the rule. *State v. Kitches*, 2021 UT App 24, ¶ 28, 484 P.3d 415 ("If the merits of a claim can easily be resolved in favor of the party asserting that the claim was not preserved, we readily may opt to do so without addressing preservation.") (quotation simplified), *cert. denied*, 496 P.3d 718 (Utah 2021). Rule 701 permits opinion testimony by a lay witness if the testimony is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Utah R. Evid. 701. Friend's testimony about her conversations with Tully is not admissible under rule 701 because, as we have concluded, the substance of those conversations goes to the standard of care for stroke patients, and

(continued…)

## CONCLUSION

¶26    The trial court did not abuse its discretion when it limited the testimony of Friend, a fact witness, insofar as it might concern her opinions on the standard of care. But, under the circumstances present in this case, the court abused its discretion when it precluded Hallett's medical expert, Dr. Kowell, from offering his opinion on causation, and it therefore also erred by granting Tully's motion for judgment as a matter of law. Accordingly, we reverse the court's order dismissing Hallett's claims and remand the matter for a new trial.

———————

rule 701 expressly prohibits testimony "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *Id.*